[Civ. No. 10056. First Appellate District, Division Two.—June 26, 1936.]

KATHERINE MORROW, Respondent, v. WALTER MENDLESON, Appellant.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Cooley, Crowley & Supple and Leighton M. Bledsoe for Respondent.

NOURSE, P. J.—Plaintiff brought this action against the two defendants to recover for injuries incurred when the automobiles operated by the defendants collided at the intersection of Jones and Sutter Streets in San Francisco, as a result of which the car operated by Mendleson struck plaintiff as she was walking across the intersection. Judgment was had against both defendants, and Mendleson alone has appealed.

There is very little real conflict in the evidence. What appears to be a conflict rests mainly on the more or less unreliable testimony of eye-witnesses who saw disconnected events leading to the injuries which plaintiff suffered. The

accident occurred about 6 o'clock on the afternoon of Sunday, the 14th of January, 1934. It had been raining during the day and the streets were then damp and slippery. Plaintiff was attempting to cross Jones Street in the pedestrian lane running from west to east on the northerly part of the intersection. As she left the northwesterly curb she was struck by the automobile operated by Mendleson, which immediately prior thereto had been struck by the one operated by Minehan. Mendleson was driving north on Jones Street, while Minehan was driving west on Sutter Street. Preceding Minehan was a street car which had stopped at the edge of the property line of the northeast corner of the intersection. Passengers had alighted, and the street car had been started on its way, but had stopped after going approximately four feet to allow Mendleson to pass. Minehan, who had been trailing the street car, did not stop as required by the California Vehicle Act and an ordinance of the city and county of San Francisco, but, having taken a position at about the front end of the street car, proceeded across the intersection after the street car had stopped the second time as above stated.

It was the theory of the plaintiff at the trial of the action that her injuries were caused by the concurrent acts of negligence of the two defendants, and evidence was offered in her behalf tending to prove the negligence of both. In this respect testimony was offered showing that Mendleson approached and crossed the intersection at an unlawful rate of speed, that the intersection was an obstructed one within the terms of the California Vehicle Act, and that, in crossing the intersection, he swung to the left of the center line of Jones Street. It was also shown that the defendant Minehan, having trailed the street car in its course westerly on Sutter Street, failed to stop to allow passengers to alight in safety as required by the California Vehicle Act, and failed to stop at a position 10 feet behind the street car as required by the city ordinance. The conductor on the street car testified that as it came to a stop Minehan's car was to the rear of the street car and that he then swung to his right and continued on across the intersection. The motorman of the street car testified as to the speed of the Mendleson car and as to its course across the intersection. A fair analysis of all the testimony is that Mendleson, having approached the intersection at an unlawful rate of speed and having seen

the street car stop to let him pass, continued across the intersection at the same unlawful rate of speed. As to the defendant Minehan, he approached the intersection in an unlawful manner in violation of both the city ordinance and state statute, and continued across the intersection at an undetermined rate of speed, but in a negligent manner, because his view of the intersection was entirely obstructed by the street car. It was and is the contention of Mendleson that, notwithstanding the question of the speed of his car, he was entitled to assume that Minehan, and all others operating motor vehicles westerly on Sutter Street, would comply with the law and not proceed across the intersection when the street car was stopped.

The issues which were thus left with the jury upon plaintiff's theory of the case were that both defendants were negligent as a matter of law, and that the negligence of both was the concurrent and proximate cause of her injuries. By the verdict against both defendants the jury determined these issues in favor of the plaintiff, and our review of the evidence convinces us that it is sufficient to support this verdict, though it should be said in behalf of the appellant that if the jury had by its verdict adjudged the negligence of the defendant Minehan as the sole proximate cause of the injuries, there would have been sufficient evidence to support that verdict. Because of this the question of the propriety of the instructions on these issues becomes of vital interest to the appellant.

At the request of the plaintiff the jury was instructed on the terms of paragraph 2 of subdivision b of section 113 of the California Vehicle Act as it read at the time of the accident. At the request of defendant Minehan, an instruction was given on the same subject which was a combination of some of the language of the first and second paragraphs, but was palpably erroneous as it defined an obstructed intersection as one in which the driver did not have a clear view of the traffic for a distance of 100 feet in both directions. The first paragraph covering railway crossings fixed this distance at 400 feet, the second paragraph relating to highway intersections in general fixed the distance at 200 feet. Nowhere in the statute prevailing at that time was the distance of 100 feet used in defining an obstructed intersection. Conceding the error and the conflict between these instructions,

we cannot say that any prejudice was suffered by the appellant therefrom. This may have been the reason why two of the jurors voted to absolve Minehan of negligence, but, as the evidence shows that the intersection was unmistakably an obstructed one under the definition of the statute and that both defendants were exceeding the limits of speed therein prescribed, it is as reasonable to assume that the jury applied the erroneous instruction to the appellant as well as to his codefendant.

As between the two defendants, the instructions given on the request of Minehan relating to the "right of way" were error and injected a false issue into the case. They were based upon the provisions of the California Vehicle Act of 1925 (Stats. 1925, p. 412), and failed to take into account the amendment to section 131 thereof enacted in 1929. Since the accident occurred in 1934 these amendments would be controlling. Instruction No. LXX given at the request of Minehan advised the jury that "Mr. Mendleson, the driver of the Chrysler automobile, was not entitled to the right of way under any circumstances, if you find he was violating the law regarding the crossing of an intersection." Instruction No. LXXV correctly gave the jury the provisions of section 131a as amended in 1929 but this was followed by No. LXXVII to the effect that if Minehan had entered the intersection in the exercise of ordinary care and without violation of law on his part at the same time that Mendleson entered the intersection, then the latter was required to yield the right of way to the former.

Numerous decisions have been written interpreting the law as it stood before the 1929 amendment, all holding that the privilege of asserting the right of way at an intersection was denied to anyone who had entered at an unlawful speed. (*Lindenbaum* v. *Barbour*, 213 Cal. 277, 281 [2 Pac. (2d) 161], where cases are cited.) Following these decisions the clause reading, "provided such vehicle is traveling at a lawful speed" was eliminated from the section so that it read at the time of the accident that a driver approaching an intersection should yield the right of way to a vehicle which had entered the intersection, and that when two vehicles enter at the same time the driver of the vehicle on the left should yield to the driver of the vehicle on the right.

■ Here the contention of Mendleson was that he entered the intersection before Minehan. He would, therefore, have been entitled to assert the right of way under the amended section, but there was testimony, which the jury must have believed, that Mendleson entered the intersection at an unlawful rate of speed. Under the instructions complained of, the jury, having found this to be so, must necessarily have found that Mendleson was not entitled to the right of way. The instructions could not have been prejudicial to Minehan to the same extent because his entry into the intersection was in clear violation of the statute and ordinance and was, therefore, negligence as a matter of law. How far this error entered into the verdict against Mendleson we are unable to say. In view of the ruling in *Couchman* v. *Snelling*, 111 Cal. App. 192 [295 Pac. 845], as approved in *Page* v. *Mazzei*, 213 Cal. 644 [3 Pac. (2d) 11], it would seem that the only question of fact to be determined by the jury on the issue of the right of way was which of the two defendants first entered the intersection, and, since the physical facts indicate that Mendleson was the first to enter, these instructions would necessarily be prejudicial to him upon that issue because by them the jury was told that his prior entry would serve him no purpose if it had been made unlawfully.

Respondent defends the instruction on the authority of the cases interpreting the old section of the act, and adds that an identical instruction was given on the appellant's request. There is a slight difference in the wording between these two instructions, but a material difference in their meaning and effect. The latter reads: ''Mr. Minehan, the driver of the Buick automobile, was not entitled to the right of way if he was violating the law regarding the passing of street cars when he entered the intersection.''

■ It was appellant's theory that, since Minehan had entered the intersection in violation of the state statute and the local ordinance, he was unlawfully in the intersection from the beginning and hence, was guilty of negligence *per se*. On the other hand, appellant's violation of the law related to his approaching and ''traversing'' an intersection at a speed in excess of that prescribed by the statute. But, as to appellant, his excessive speed ''shall not be deemed to have been negligent as a matter of law'', but the question whether

such speed constituted negligence must be left with the jury. (California Vehicle Act, sec. 113d.) It is settled law that a party is entitled to have the jury instructed as to his theory of the case if the facts warrant the instruction, and this injunction is not met when the instructions remove that theory from the consideration of the jury. We do not hold that appellant's theory is sound or that it should have been sustained under the facts of this case; but, since the collision occurred at the extreme northwest portion of the intersection when appellant had almost cleared it, and, since the points of contact of the two cars were the extreme right rear fender of appellant's car and the extreme right portion of Minehan's front bumper, it is apparent that, if appellant had been "traversing" the intersection at a faster speed, no collision would have occurred. Thus, the question whether the rate of speed at the time was in fact negligence was a question which, under appellant's theory, should have been left to the jury.

■ The appellant complains that the instruction given at the request of the plaintiff covering the mortality tables was improper because the evidence showed that the plaintiff was a semi-invalid, 63 or 64 years of age, and was not, therefore, at the time of the accident a normal person of average good health. Authorities are cited holding that a jury may consider the mortality or American experience tables only in respect to one who is in average or normal good health, and that the presumption of life expectancy based upon such tables is one applying to a person of average normal health only. The point has not been decided by any California case which has been called to our attention, but *Norris* v. *Detroit United Ry.*, 193 Mich. 578 [160 N. W. 574], and *Colbert* v. *Rhode Island Co.*, (R. I.) 67 Atl. 446, support the appellant and are sound in principle and reasoning. Since the evidence offered by the plaintiff herself showed that she had long suffered from high blood pressure, dizziness and many other physical ailments, and had been under the care of a physician for ten years before the accident, this might have dispelled the presumption of life expectancy (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540, 553 [299 Pac. 529]), and the question of life expectancy should therefore have been left to the jury to be determined upon competent evidence based upon the condition of health of the plaintiff prior to the time of

the accident. For this reason instruction No. LIII should not have been given.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 25, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1936. Seawell, J., and Curtis, J., voted for a hearing.