[Civ. No. 11222. First Appellate District, Division Two.—October 3, 1940.]

DAN W. MARTIN, Plaintiff and Respondent; CONTINENTAL CASUALTY COMPANY (a Corporation), Intervener and Respondent, v. CLINTON CONSTRUCTION COMPANY (a Corporation) et al., Appellants.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellants.

Cooley, Crowley & Supple and Keith & Creede for Respondents.

STURTEVANT, J.—Prior to the 1st of February, 1935, the state of California had commenced to construct a bridge leading from San Francisco to Oakland. The plan of that construction included the excavation of a tunnel through Yerba Buena Island and the construction of a roadway in said tunnel as a part of the bridge. Said island was ceded to the United States by the Mexican republic July 4, 1848. It is a naval reserve and has been since 1850. A contract was awarded to the Clinton Construction Company to put in place concrete structures from the eastern side of said island to the eastern portal of said tunnel. The latter company awarded a subcontract to Victor Lemoge to install certain electrical appliances. Lemoge sent one of his employees, Dan W. Martin, together with others, to do the work. In addition to the principal contract Victor Lemoge had another contract, an arrangement for doing extra and emergency electrical work on the job on a time, material and profit basis for the Clinton Construction Company. The intervener, Continental Casualty Company, executed policies as insurance carrier for Victor Lemoge. Martin had been in the employment of Lemoge for many years. Both Martin and Lemoge resided in, and Lemoge's principal place of business was in, and Martin's contract of employment was made, in San Francisco. On February 21, 1935, the agents of the Clinton Construction Company were engaged in hauling wet concrete from the western side of said island to a point near the eastern portal. One of those agents was the defendant II. B. Gilman. The superintendent on the job for Clinton Construction Company was Harry McCloy. The individual specially in charge of placing the concrete was Antone Reginato. At about 1:30 p. m. the latter called upon Dan W. Martin to repair the connections to an electrical vibrator

used in tamping the concrete. In company with McCloy he started to the place where the vibrator was located. On his way to that point he was struck, knocked down and run over by a truck being operated by the defendant Gilman. Later he filed an application with the Industrial Accident Commission to have his claim adjusted. The claim was brought against Victor Lemoge, Clinton Construction Company, and Continental Casualty Company. The Industrial Accident Commission on the 17th day of April, 1935, made an award in favor of Dan W. Martin against Continental Casualty Company and dismissing the claim as to Victor Lemoge and the Clinton Construction Company.

Some time prior to the 19th day of October, 1935, Dan W. Martin commenced this action. He named as defendants Clinton Construction Company and H. B. Gilman. He alleged that he was injured by the negligent operation of a truck being driven by H. B. Gilman in the business of the construction company. The date the original complaint was filed does not appear in the record, but an amended complaint was filed October 18, 1935. Still later an amendment was filed to the amended complaint. Both defendants answered, setting forth many denials and also pleading the contributory negligence of the plaintiff. The Continental Casualty Company filed a complaint in intervention, alleging that it "had paid or been obligated to pay" $17,222.23 and prayed to be reimbursed. The defendants answered the complaint in intervention. They pleaded many denials and the contributory negligence of the plaintiff. They further pleaded " . . . that the above named court has no jurisdiction of the subject-matter of the within action as to said defendant, or of the parties to said action, defendant Clinton Construction Company, plaintiff Dan W. Martin, and plaintiff in intervention Continental Casualty Company, a corporation, in that by reason of the employment relationship between plaintiff Dan W. Martin and defendant Clinton Construction Company jurisdiction thereof is vested solely in the Industrial Accident Commission of the State of California, pursuant to the provisions of the California Workmen's Compensation, Insurance and Safety Act of 1917, and amendments thereto."

The present trial was commenced on May 1, 1938, before the trial court sitting with a jury. At the conclusion of the

case for plaintiff and plaintiff in intervention, defendants moved for a nonsuit upon the following grounds: ''(1) Plaintiff was guilty of contributory negligence as a matter of law; (2) Plaintiff assumed the risk of injury; (3) Defendants were free from negligence; (4) Plaintiff in intervention had no standing in court as the accident occurred on federal territory and the state compensation act was therefore inapplicable; (5) Plaintiff in intervention had no right of subrogation as the accident occurred on federal territory; (6) The claim of plaintiff in intervention was barred by the statute of limitations; (7) Jurisdiction of the subject matter rested solely in the Industrial Accident Commission of the State of California; (8) Plaintiff in intervention was estopped from asserting any claim.'' The motion for nonsuit was denied as to all parties and on all grounds. Defendants urged the same grounds on motion for a directed verdict at the conclusion of the entire case. The motion was denied. Verdict of the jury was in favor of plaintiff and plaintiff in intervention and against both defendants in the sum of $25,-000. Following denial of a motion for judgment notwithstanding the verdict on the grounds above stated, judgment was entered on the verdict. Other facts will be recited as and when it becomes necessary.

*The Plaintiff's Case.*

██ The defendants contend the plaintiff did not prove the charge and that they were not negligent. They say the plaintiff's status was ''either that of an employee of the defendant construction company or of a business invitee on premises under its control.'' Continuing they contend that if Martin was an employee his remedy was an application to the Industrial Accident Commission. But, as will hereinafter appear, said commission had no jurisdiction. Therefore our inquiry is limited to the plaintiff's claim as an invitee. The defendants assert there was no evidence that there was a latent or concealed defect in the premises. (*Maulino* v. *Sutter Hospital Assn.*, 211 Cal. 556, 560, 561 [296 Pac. 76].) The plaintiff replies that he makes no claim to the contrary; but he says the evidence was sufficient to support his claim that the defendants were guilty of active negligence. (*Lucas* v. *Walker,* 22 Cal. App. 296 [134 Pac. 374].) That claim we think is clearly sustained by the evidence. The specific facts are these. The plaintiff was in the Lemoge shop, a place of

safety, but, subject to the call and directions of the defendant construction company. McCloy, the agent of the latter, called on him to go adjust the circuit serving one of defendants' electrical vibrators. McCloy said, "Follow me." The plaintiff did. While doing so he was led to the spot where the accident happened. Near by stood a pole on which the wires were supported which served the vibrators. As he passed that pole the plaintiff paused to inspect conditions at that point. However, McCloy walked on. While the plaintiff was inspecting said pole, the defendants suddenly and without notice backed their truck against him, knocked him down, and ran over him, causing the injuries complained of. These facts, we think, clearly bring the present case within the doctrine stated in *Lucas* v. *Walker, supra*.

 The defendants next contend the plaintiff was guilty of contributory negligence which was a proximate cause of his injuries. The defendants point to the fact that the plaintiff did not follow immediately behind and in the footsteps of McCloy. But it was his duty to locate the break in the circuit. In pausing to look up at the top of the pole above mentioned we must assume he was performing one of the functions of the employment in which he was engaged. That it was his duty to exercise reasonable care to listen and look for dangerous conditions the plaintiff does not deny. However, he testified he did so and that no truck entered the cut or backed toward him until he had resumed his course in following McCloy, and shortly thereafter he heard it, but when he looked the truck was so close to him he did not have time to protect himself. In other words, the record does not show a set of facts showing that to look was to see, but plaintiff did not look. He said he did look and the truck was not in a position of potential danger to him at the time he looked.

 Closely allied to the last point is the contention that the plaintiff assumed the risk. As shown above that contention involves the application of that doctrine when the status of the claimant is that of an invitee. As so presented the subject was carefully considered in the recent case entitled *DeGraf* v. *Anglo California Nat. Bank,* 14 Cal. (2d) 87, 99–101 [92 Pac. (2d) 899]. On the authority of that case it may not be said the verdict of the jury, holding in favor of the plaintiff on said issue, was not sustained by the evidence.

■ The plaintiff called as a witness George B. Branch, one of the truck drivers for the defendant. On cross-examination he testified that before he went into court he spoke to Mr. Supple, one of the attorneys for the plaintiff. On redirect examination the following occurred: "Mr. Supple: Q. Just one question: Did Mr. Gilman come down to see you this morning at the Standard station on Kearny Street? A. Yes, he did. Q. And who was with him? A. Mr. Johnson. Q. Who is Mr. Johnson? A. Well, I understand that he is—represents an insurance company. Mr. Alexander: Just a minute, your Honor, I assign this conduct on the part of plaintiff as misconduct, and with regret, because of the misconduct, I ask that the jury be discharged. . . . The Court: Motion denied." The defendants, at this time, press the point claiming prejudicial error. That it was error we concede. But we are not inclined to hold the error prejudicial. The answer of Mr. Branch, "Well, I understand that he is—represents an insurance company", was no statement that any party to this action carried insurance; nor, if it did, that Mr. Johnson represented such insurance company. The mere possibility that such was the fact, as intimated in the attack of the defendants, is not sufficient to support a holding that the incident in question constituted prejudicial error.

■ Over the objection of the defendants the plaintiff's witness Lyon, another one of the truck drivers on the job, testified as to how the drivers approached with a load of concrete and how they unloaded it. The defendants claim such evidence was erroneously received. (*Boone* v. *Bank of America N. T. & S. Assn.*, 220 Cal. 93 [29 Pac. (2d) 409].) That case involved the habit of the decedent of driving his motorcycle at excessive speeds. The evidence objected to in the instant case involved a concise description of the work being done at the time of the accident. The evidence was clearly admissible " . . . on the question of care and diligence exercised by those charged with lack thereof in the instant case." (*Perumean* v. *Wills*, 8 Cal. (2d) 578, 583 [67 Pac. (2d) 96].)

■ On the offer of the plaintiff the trial court admitted in evidence mortality tables. The defendants quote portions of the record which recite certain facts to the effect that the plaintiff had, prior to the date of the accident, complained of certain ailments. The defendants assert the plaintiff was

not, therefore, at the time of the accident, a normal person of average good health and that the tables were not admissible. (*Morrow* v. *Mendleson,* 15 Cal. App. (2d) 15, 21–22 [58 Pac. (2d) 1302].) But, in the present case, the trial court received pertinent evidence as to the facts and gave a proper instruction as to the duty of the jury in determining the facts. No such instruction was given in *Morrow* v. *Mendleson, supra.*

■ After the plaintiff had introduced parts of the award of the Industrial Accident Commission, the defendants offered the balance thereof, but the trial court sustained the objection of the intervener thereto. The defendants claim the entire award was *res judicata* and should have been admitted. But, as we have hereinafter shown, the Industrial Accident Commission had no jurisdiction and its award was not *res adjudicata.* The ruling of the trial court was correct.

■ Acting on the request of the plaintiff, the trial court gave the following instruction: ''Toward an invitee those who have joined in the invitation, express or implied, are obliged to exercise ordinary care to keep the premises in a reasonably safe condition, *to give reasonable warning of known dangers,* and to refrain from active negligence.'' The defendants have italicized the above words and assert the true rule is correctly stated in *Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556, 560 [296 Pac. 76]. They assert the instruction imposed on the construction company the duty of warning Martin of dangers that were obvious. If the above were the only instruction given on the subject treated therein, the objection might have merit. But the trial court gave several other instructions. One stated: ''The law imposes upon everybody the duty of using ordinary care to see and observe that which is open and visible. . . . '' Another stated: ''The law required Mr. Martin, of course, to use his eyes and other faculties to protect himself from injury. If you find that he could have observed the approaching truck by the use of ordinary care on his part, but that he failed to use ordinary care . . . '', he cannot recover. And again: ''If you find that prior to the accident Mr. Martin observed the situation and the operations that were being carried on there, then I instruct you that he is charged with knowledge of the existing conditions.'' In other instructions the jury was told that

the defendants were bound to exercise ordinary care and that expression was carefully defined. Moreover, the jury was instructed: "You are cautioned not to select a single instruction or a portion of an instruction alone, but to consider all of the instructions in determining any issue in this case." Bearing in mind all of these matters, we think the instruction complained of could not have misled the jury.

The defendants requested and the court refused to give several different instructions applying to the case the doctrine of assumption of risk. As to the ordinary risks of the work which the plaintiff was called upon to do in the particular place at the time of the accident, the instructions given were full and complete. As to any extraordinary risks there is no evidence the plaintiff had any knowledge thereof before going into the cut. "The fact that one voluntarily assumes a certain degree of risk is not conclusive of negligence." (*Rasic* v. *Schultheiss*, 121 Cal. App. 560 [9 Pac. (2d) 550].) "And before it can be said that one has 'assumed the risk' of a specified hazard, it must be shown that he had knowledge of the condition creating the hazard. One does not assume the risks of danger which he has no reason to anticipate." (*DeGraf* v. *Anglo California Nat. Bank*, 14 Cal. (2d) 87, 100 [92 Pac. (2d) 899, 905].) Under the facts of this case we think the court did not err in refusing to give the said instructions.

Finally the defendants contend that $25,000, the damage allowed by the jury, was excessive as a matter of law. That contention may not be sustained under the facts. In the accident the plaintiff suffered a broken shoulder and a crushed pelvis. The latter was an extreme condition. It included not only the breaking of pelvic bones but the tearing of many tissues. At the time of the trial the pelvic cavity was deformed, one leg was an inch and a half shorter than the other. At the time of the accident the urinary organs were so torn as to be separated. That separation has not been remedied and the plaintiff's doctors consider the condition permanent. The plaintiff has a fistula which will probably continue during his life. The uncontradicted medical testimony was to the effect that said injuries were permanent. The expenses of treatment down to date of the trial were $3,722.23. The plaintiff's loss in wages was in excess of $8,000. The award of the jury of $13,000 to cover the pain

and suffering and permanent disability of the plaintiff may not, we think, be said to be excessive as a matter of law.

## The Case of the Intervener.

As noted above the plaintiff was injured in an accident which occurred on Yerba Buena Island. That island was a part of the territory ceded to the United States by the treaty of Guadalupe Hidalgo, May 26, 1848. Out of a part of the territory so ceded the State of California was organized. The boundaries of the state were delineated in its Constitution adopted in 1849. (Sec. 1, Art. XII.) That Constitution was approved by the Congress on September 9, 1850, by "An Act for the Admission of the State of California to the Union." (9 U. S. Statutes at Large, 452.) That statute contains no reservation of rights in the federal government; but, commencing as early as November 6, 1850, the federal government took certain proceedings looking to the creation of a federal naval reserve. Then by Chapter LVI, Statutes of 1897, the state ceded to the United States "exclusive jurisdiction over all lands within this state now held, occupied or reserved by the Government of the United States for military purposes or defense, . . . provided this state reserves the right to serve and execute on said lands all civil process not incompatible with this cession, and such criminal process as may lawfully issue under the authority of this state against any person or persons charged with crimes committed without said lands." Having recited the foregoing facts, the defendants contend the Industrial Accident Commission had no jurisdiction to make an award and therefore the plaintiff in intervention had no right of subrogation and that the judgment in its favor should be reversed. (*Allen* v. *Industrial Acc. Com.*, 3 Cal. (2d) 214, 215 [43 Pac. (2d) 787].) The intervener controverts that proposition and claims the State Compensation Law applies to injuries suffered on federal territory where the contract is made on state territory. (*Lynch's Case*, 281 Mass. 454 [183 N. E. 834, 86 A. L. R. 285].) We concede at once that there are some expressions of the Supreme Court of Massachusetts in the case last cited tending to support the claim of the intervener. We concede also that there are other decisions of state courts that are more or less to the same effect. (See note 86 A. L. R. 289.) However, the point involves a federal question. It was clearly presented in the case of *Murray* v. *Joe Gerrick & Co.*, 172

Wash. 365 [20 Pac. (2d) 591]. The Supreme Court of Washington held that, in the absence of a federal law extending it, the Industrial Insurance Act of Washington did not extend over Puget Sound Navy Yard which is subject to the federal government's exclusive jurisdiction. The plaintiff applied to the Supreme Court of the United States for a writ of *certiorari*. The latter court carefully considered the facts and all of the justices concurred in a judgment affirming the decision of the Supreme Court of Washington. (*Murray* v. *Joe Gerrick & Co.,* 291 U. S. 315 [54 Sup. Ct. 432, 78 L. Ed. 821, 92 A. L. R. 1259].) In 291 U. S. at page 318, the court said: "The state Supreme Court held that the compensation act does not apply to territory beyond the authority of the state legislature. *But it also held that act could not have any force in the navy yard, since it was adopted many years after the cession of jurisdiction by the state* and the consequent acquisition of the tract by the United States. In this the court was clearly right. After the effective date of the state's cession the jurisdiction of the federal government was exclusive (citing cases), and laws subsequently enacted by the state were ineffective in the navy yard (citing cases)." (Italics ours.) ▮ In *Standard Oil Co.* v. *California,* 291 U. S. 242, at page 245 [54 Sup. Ct. 381, 78 L. Ed. 775], the court said: "A State cannot legislate effectively concerning matters beyond her jurisdiction and within territory subject to control by the United States." The same rule is set forth in section 33 of the Political Code. ▮ This being a federal question the state courts are bound to follow the decisions of the Supreme Court of the United States. It will serve no purpose therefore to discuss the decisions of the state courts.

▮ On February 1, 1928, the congress enacted a statute regarding actions for death or personal injury within national park or other place under jurisdiction of the United States. (U. S. C. A., title 16, sec. 457.) The intervener quotes it and contends that its rights to subrogation were confirmed thereby. The same contention was made in *Murray* v. *Joe Gerrick & Co.,* supra. The Supreme Court of the United States also carefully considered that contention. Among other things it said: "This argument overlooks the fact that the federal statute referred only to actions at law, whereas the state act abolished all actions at law for negligence and substituted a system by which employers contrib-

uted to a fund to which injured workmen must look for compensation."

The intervener further contends that under the doctrine of *res judicata* the decision of the Industrial Accident Commission in the case of *Don W. Martin* v. *Victor Lemoge and Clinton Construction Company* conclusively established the jurisdiction of the Industrial Accident Commission of California over Dan Martin's injuries. We think the contention is without merit. The defendant H. B. Gilman was not a party to the proceeding before the commission and was not in any manner bound by its award. Furthermore, as shown above, the accident occurred on Yerba Buena Island, a reservation of the United States, over which the jurisdiction of the congress is exclusive, and over which the state of California had no jurisdiction. All of these facts appearing in the record it is clear said award was not *res judicata*.

It follows that the trial court erred in ordering a judgment entered in favor of the plaintiff in intervention. But the defendants have not shown, and we cannot see any basis for holding that the error, under all the facts contained in this particular record, has resulted in a miscarriage of justice. Before this court orders a reversal that showing must be present. (Const., art. VI, sec. 4½; *Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970].) In the cited case, at page 263, Mr. Justice Shenk, speaking for the court, quoted with approval, "The trial court decides as to the facts, the court of review (in this state) as to questions of law only." Then, speaking of section 4½, he said: "The theory of that section is based upon the assumption that the reviewing court may find error in the record as a matter of law, and the effect of the section was to release the reviewing court from the rigid rule that prejudice was presumed from error and to enjoin upon the reviewing court the duty to declare, when confronted in the record with any one or more of the enumerated errors, whether the error found to exist has resulted in a miscarriage of. justice, and not to reverse the judgment unless such error be prejudicial." The plaintiff is not complaining of the error and we think the defendants are not prejudiced.

The judgment is affirmed.

Nourse, P. J., concurred.

Spence, J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 2, 1940, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied. The defendant construction company quotes from our opinion: "While doing so he was led to the spot where the accident happened. Nearby stood a pole on which the wires were supported which served the vibrators. As he passed that pole the plaintiff paused to inspect conditions at that point. However, McCloy walked on. While the plaintiff was inspecting said pole, the defendants suddenly, etc." It then claims we have misstated the record. We think not. Plaintiff's exhibit A is before us. It is drawn to scale. The evidence of the plaintiff, as shown by his marks on that exhibit, is that when he paused a few seconds he was 32 feet from the pole and was facing east. He then turned and walked 35 or 40 feet to the west. There the accident happened. Obviously our statement, quoted above, was not inexact when, it will be remembered, we are dealing with the area of an island containing many acres.

It is likewise clear that said passage contained nothing tending to make erroneous anything said in our opinion on contributory negligence or assumed risk.

The defendant also contends that we were in error in holding that the entry of judgment in favor of the plaintiff was not prejudicial error. Its contention is based on the fact that the only showing as to medical expenses consisted of a portion of the award of the Industrial Accident Commission which was introduced in evidence by the plaintiff in intervention. But, at no time, did the defendant ask for an order limiting the effect of that evidence. Therefore it may not do so now. (10 Cal. Jur. 816.) Such rule is of much importance when actions are brought and defended under the provisions of sections 3850–3862 of the Labor Code.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1940.