*Supp. 849 SHOEMAKER, J.
In this action, plaintiff recovered a judgment in the sum of $3,000 against the defendants Stanfel and Double Play Tavern for injuries she received by being struck by a baseball thrown by a player on a baseball team sponsored by the defendants.
Defendants appeal, contending, first, that the player was not the agent or servant of defendants, and, second, even though this relationship might be assumed, for the purpose of argument, to have existed, nevertheless the negligent act which caused the injury cannot be held to be within the scope of the employment, and hence that defendants cannot be held responsible under any theory for plaintiff’s suffering.
The evidence establishes "that defendant Stanfel and others of his family are the operators of the Double Play Tavern, a bar located in San Francisco. In 1949, and for several years prior thereto, defendants sponsored a semipro baseball team. In 1949 this team, called “Double Play,” was playing in a night league organized by the San Francisco Recreation Department. Defendant Stanfel testified that the uniforms of the team were furnished by the defendants and that each uniform carried the insignia “Double Play”; the team was known as the Double Play Tavern team; that defendants furnished the balls, bats, equipment, entry fee for the league, the team’s share of the umpire expense; that such expenses as were incurred in operating the team were deducted in income tax returns as business expense; that if championships were won, the players were given a banquet and trophies; that accounts of the games were carried in the local newspapers and the games were open to and were attended by the general public; that none of the players worked in the tavern business, they were men interested in the sport of baseball and enjoyed team play as provided by these sponsored teams; that none of the Stanfels played on the team; that he selected the manager of the team, in this case Gene Gibbons; that in making a selection of manager he tries to get someone the players like and respect, for the manager can allow a man to play or not as he sees fit and unless the manager has their approval they quit, also if he puts them on the bench they might resent it and leave the team, so he tries to get a good man both for the team and the payers. In this respect Gibbons testified that he was a policeman and had been asked by Stanfel to manage his team; that he had been manager for over one year, received no monetary compensation and that it was his duty to rim the ball club and do as he saw fit on *Supp. 850 the field; he could put a player in or out of the play, and had the right to put new men on the team if he wanted them.
On the night of October 27, 1949, the “Double Play” team and the “Bartenders” team were engaged in the final contest of the season for the league championship at Funston Field. At about 9:45 p. m. it was the last half of the ninth inning, with Double Play in the field, the score 0 to 0, when, with the bases loaded, Paul Hjort, the Double Play left fielder, dropped a high pop fly and the winning run scored. Hjort, in disgust and anger, picked up the dropped ball and threw it out of Funston Field, across Bay Street and in the direction of the Standard Oil service station located on the corner of Bay and Buchanan Streets. At this time plaintiff, who was walking across the station property to get into her fiance’s car, was struck by the ball on the side of her head, knocked to the ground thereby and received the injuries of which she now complains.
Since neither party requested findings, every intendment favors the judgment appealed from and it is presumed that the court found every fact or inference essential to support the judgment warranted by the evidence. (Sparling v. Housman, 96 Cal.App.2d 159 [214 P.2d 837].)
We have recounted the evidence in this case with some particularity and it appears to us therefrom that the trial court was warranted in determining that Hjort, in his playing ball on the “Double Play” team was, in that respect, an agent of the defendants. (Shafer v. Keeley Ice Cream Co., 65 Utah 46 [234 P. 300, 38 A.L.R. 1523]; Federal Mut. Liability Ins. Co. v. Industrial Acc. Com., 90 Cal.App. 357 [265 P. 858].)
It is not necessary that pecuniary compensation be paid to constitute one an agent or servant; an employment may be gratuitous (Cal. Lab. Code, §§ 350 and 2750; Edwards v. Hollywood Canteen, 27 Cal.2d 802 [167 P.2d 729]), and while we agree with defendant’s argument that in order to have a relationship of master and servant there must be a right to direct and control the operation, we cannot agree that there is no evidence of that right in this case. A fair consideration of the evidence in this respect no doubt led the trial court to conclude that there was such a right to direct and control, whether such right was exercised or not (testimony of Stanfel and Gibbons); this was a baseball team, assembled to represent Double Play Tavern; to do so in championship style, if possible; to reflect glory on the *Supp. 851 sponsor as well as on the team; the incidental expenses of its operations were taken as a deductible business expense on the tavern’s income tax returns, and the effort was directed and controlled to achieve a beneficial result to Double Play Tavern. (Riskin v. Industrial Acc. Com., 23 Cal.2d 248 [144 P.2d 16]; Malvich, v. Rockwell, 91 Cal.App.2d 463 [205 P.2d 389].)
Where the arrangements between an' employer and employee are entirely oral, as in this case, a determination as to the relationship of the parties is within the province of the trier of fact. (Robinson v. George, 16 Cal.2d 238 [105 P.2d 914].)
We pass now to the question as to whether or not the act of Hjort was within the scope of his employment. If it can be said to be, then, having found that the relationship of master and servant existed between him and the defendants, it must necessarily follow that defendants are responsible to plaintiff.
The type of negligent act by an employee that may be said to be within the course and scope of his employment so as to charge his employer with responsibility for the damage thus caused has been discussed completely in our California cases. We need but refer to the eases of Hiroshima v. Pacific Gas & Elec. Co., 18 Cal.App.2d 24 [63 P.2d 340], and Fields v. Sanders, 29 Cal.2d 834 [180 P.2d 684, 172 A.L.R 525], to demonstrate the California rule upon the subject.
In the Hiroshima case, where many authorities are collected and commented upon, it is said, at page 28, after referring to section 2338 of the Civil Code: “The authorities hold that if the assault takes place in the course of the agent’s employment, the principal is liable. The language of the code which we have just set forth reads: ‘Wrongful acts committed by such agent in and as a part of the transaction of such business. ’ not, as appellant would have us hold, for the purpose of transacting the business. ’ ’
Further, at page 29: “In the early case of Riordan v. Gas Consumers’ Assn., 4 Cal.App. 639 [88 P. 809], the court approved the following: ‘In order to fix the responsibility of the defendant it is not necessary for the plaintiff to prove that the servant for whose tort he seeks damages was, at the time of the commission of the tort, engaged in executing specific commands of the defendant. It is enough for him to prove that the servant was acting within the general scope of his employment, but this much is necessary.
*Supp. 852 " ‘Whether the act of a-servant is within the -scope of his duty, while acting in the furtherance of his master’s business, is a matter of fact to be determined by the jury, and not by the court as a matter of law.’ ” (Citing cases.)
“One of the best considered eases on the subject we are considering is that of Gulf C. & S. F. Ry. Co. v. Cobb, (Tex. Civ.App.) 45 S.W.2d 323. In that case it is said: ‘In practically all jurisdictions the law is now settled that a master is liable for the wilful and malicious acts of his servant when done within the scope of his' employment. . . .’ The court further says: ‘It is not the illegal, malicious, unauthorized or negligent act of the servant which is required to be within the scope of the employment, or the authority of the servant, or in furtherance of the master’s business, because, under the rule above announced, the master it liable for any such act of the servant which, if isolated, would not be imputable to the master, but which is so connected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as one indivisible tort, which, for the purposes of the master’s liability, takes its Color and quality from the earlier act. ’ ’ ’
Surely, in the instant case, where the .injury is suffered from a baseball thrown immediately after the player had dropped it, with the consequent loss of the game and championship, at a time when all the players were at a competitively high nervous pitch, in a sport where “hustle” and “fight” are fostered and encouraged, it is not too difficult to conclude that a player might well, in frustration, take the ball and heave it out of the lot, and that such conduct might well be expected by the master. The breaking of clubs, bats and sticks by excited players is a matter of common knowledge to all sportswise persons.
The claim that the award of damages is excessive is without merit. There is no showing of passion or prejudice on the part of the trial court, nor of lack of evidence to support the award, and under such circumstances its determination is final.
We have given thorough consideration to the case of Rogers v. Allis Chalmers Mfg. Co., 153 Ohio St. 513 [92 N.E.2d 677], wherein an employee of defendant was asked by the company athletic program director if he would participate in a twilight golf league, to which he consented, and thereafter while playing, a ball hit by him struck and injured the plaintiff Rogers. During the league games the employee wore a shirt carrying *Supp. 853 the company’s name, his fees were paid by the company, and at the- conclusion of the season the company held a banquet for the participating employees and distributed trophies for athletic prowess.
The facts recited were contained in the opening statement of counsel for plaintiff at the commencement of the jury trial of -the cause. Upon conclusion, a motion for a nonsuit on this opening statement was made and granted and in the reported case, affirmed.
This' authority would appear to be determinative of our action. However, we believe the ease can be distinguished on several grounds.
Factually, in the instant case, there was control and direction which was found by the trial court after hearing testimony in the action, a showing which plaintiff Rogers was not permitted to make by any examination of witnesses,- there was a difference in the sport involved, one being a team effort—the other, individual participation which could well bear upon the question as to direction and control.
Legally, the granting of a nonsuit on an opening statement is not favored in California, since the early case of Emmerson v. Weeks, 58 Cal. 382, wherein it was stated: “It would be much better not to non-suit on an opening statement, unless- it is clearly made, and it is plainly evident therefrom that no ease can be made out. ’ ’
It is' óur opinion that this case, coming before us after a trial by the court and the hearing of the testimony of many witnesses, likewise presents a different situation than was faced by the court in the Rogers case. We now approach this judgment, as we must, with every intendment favoring it.
Judgment affirmed.
Devine, P. J., concurred.