[Civ. No. 5052.   Fourth Dist.   Nov. 3, 1955.]

GENE MANN, Appellant, v. NUTRILITE, INC. (a Corporation) et al., Respondents.

Robertson, Harney & Behr and Robertson, Harney, Drummond & Dorsey for Appellant.

Head, Jacobs, Corfman & Jacobs for Respondents.

BARNARD, P. J.—This is an action for damages for injuries sustained by the plaintiff on July 24, 1952, while she was on a baseball field acting as chaperone for a girl's soft ball team, known as "The Pirates."  During a "warm-up" period, preceding a game, a member of this team threw a ball which struck the plaintiff on the head.  This action was

based on the theory of *respondeat superior*, it being claimed that the four defendants sponsored and had the right to control this team. A motion for a nonsuit was granted, and the plaintiff has appealed from the judgment which followed.

The complaint alleged that each of the four defendants, Nutrilite Products, Inc., Nutrilite Foundation, B. P. Kids, Inc., and Boys' Club of Buena Park, is a corporation with its principal place of business in Orange County; that on July 24, 1952, these corporations owned and operated a baseball team in the vicinity of Buena Park known as "The Pirates," one of whose players was Bessie Baker; that on said day Bessie Baker was the agent and employee of these four corporations and was acting within the scope of said agency and employment; that on said day the plaintiff was present at a certain school playground, at which place this team was to engage in a baseball game; that on said day Bessie Baker negligently and unlawfully threw a baseball; that these defendants negligently and unlawfully trained, managed and controlled the activities of Bessie Baker; and that as a direct and proximate result of such negligence said baseball hit and struck the plaintiff's head, causing the injuries complained of.

B. P. Kids, Inc., was a nonprofit corporation which promoted youth activities in Buena Park. Among other things it sponsored some 10 or 12 softball teams for children from 10 to 18 years of age. These teams were managed by Raymond Thomas, who was Director of Recreation of B. P. Kids, Inc. and whose salary was paid from its general fund. B. P. Kids, Inc. is now defunct and has no assets, its successor being the Boys' Club of Buena Park. Nutrilite Products, Inc. is a manufacturing corporation which had made charitable contributions to the Nutrilite Foundation, a nonprofit charitable corporation. Nutrilite Foundation also had received donations from other individual donors. B. P. Kids, Inc. received contributions from Nutrilite Foundation and also from other sources, including the Community Chest, local merchants, Knotts Berry Farm, a newspaper, and various individuals. B. P. Kids, Inc. also carried on various activities to raise money for its general fund, including dancing and other forms of entertainment. Nutrilite Foundation had at times been the largest single contributor to the B. P. Kids, Inc.

One of the teams sponsored by B. P. Kids, Inc. was "The Pirates," a soft ball team for girls under the age of 18 years.

Blouses worn by the players on this team had the word "Nutrilite" sewed on the back. These blouses were ordered by Mr. Thomas under instructions from the board of directors of B. P. Kids, Inc., which consisted of 15 members. This action was taken by that board in appreciation of the amounts contributed by Nutrilite Foundation to youth activities. The money to pay for these uniforms came from the general fund of B. P. Kids, Inc., and the board of directors of B. P. Kids, Inc. had not requested or received any authorization from Nutrilite Foundation or Nutrilite Products, Inc. to put the word "Nutrilite" on these blouses.

The plaintiff was secretary and treasurer of the Orange Empire Girls Soft Ball League, in which "The Pirates" were playing. She testified that Mr. Thomas acted as coach for the team and that she acted as chaperone, going with the girls to the games and seeing that they did not get into trouble. On this occasion, she went into the outfield with a group of seven or eight girls to whom balls were being batted for the purpose of "warming up." Her job as chaperone was on a voluntary basis. It was not usually her custom to assist the girls in warming up, and on this occasion she was not requested to do so. The balls were being batted from a position along the first base line to the girls who were some 100 or 110 feet distant in the outfield. A ball was hit and the plaintiff saw it caught by Miss Baker. The plaintiff testified that after seeing Miss Baker catch the ball she looked around to see if there was another ball coming from some other direction. About that time Miss Baker threw the ball back toward the batter, and the ball struck the plaintiff. Miss Baker testified that it was the custom when she got a ball that was knocked to the outfield in these warm-ups to throw it back toward the batter; that this is what she did on this occasion; that besides Miss Mann there were seven or eight of "us girls" between her and the batter; that when she threw she intended the ball to go over the heads of these girls, intending it to land between where the girls were and the batter; that the ball, however, went up in the air at an angle and then came down; and that she knew that the plaintiff was in the direction in which she was throwing, but did not know that the plaintiff would "happen to be in the particular place she was." The plaintiff testified that she had played soft ball since she was eight years old and was familiar with the game; that it was customary for a team to warm up before a game; that she knew that balls would be batted

around and thrown around during the warm-up; that she did not know that a ball would be thrown so close as to endanger her, because she had been taught that a warning such as "ball up" should be yelled before a player threw a ball to the batter; that she had heard the girls on this team give such a warning, "not every one of them, but the majority of them"; and that Miss Baker did not give such a warning. She also testified that she knew that when balls were thus being batted out the balls would be thrown back in; that she was standing about in a line between Miss Baker and the batter when this ball was thrown; that she knew that Miss Baker would throw the ball back; and that she turned her head away after she saw her catch the ball. Miss Baker testified that she had been a member of this team for two months and had never been told to give such a warning before throwing a ball. Mr. Thomas testified that "The Pirates" was the only girls' team that had "Nutrilite" on their uniforms; that he had told the girls that when another person was in the way the ball should be thrown on a direct line, about 10 feet high and with as little arc as possible; that the girls usually yelled "heads up" or "watch out" when they saw that anyone was in the way; and that he could not recall having instructed them to do so.

The appellant contends that the evidence does not show, as a matter of law, that she assumed the risk; and that there was sufficient evidence of the existence of a relationship of sponsor or employer between the Nutrilite defendants and "The Pirates" team to require the question of *respondeat superior* to be submitted to the jury. With respect to the assumption of risk the appellant concedes the usual rule relating to a spectator or participant, as found in such cases as *Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144] and *Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal. App.2d 484 [222 P.2d 19], but argues that these rules are not applicable here since this case is based on the negligence of a player and the doctrine of *respondeat superior*. It is argued that one does not assume the risk of another's negligent conduct, citing *Bee* v. *Tungstar Corp.*, 65 Cal.App.2d 729 [151 P.2d 537]; *Muskin* v. *Gerun*, 46 Cal.App.2d 404 [116 P.2d 105]; and *Martin* v. *Clinton Const. Co.*, 41 Cal. App.2d 35 [105 P.2d 1029, 106 P.2d 629], and also that the appellant cannot be charged with assumption of the risk since she did not know that a ball would be thrown so close to her as to become a danger. It is argued that the appel-

lant was unaware of her peril; that the injury occurred during a warm-up period rather than an actual game; that Miss Baker was negligent in attempting to return the ball from a position 12 feet to the rear of the appellant without giving a warning, and in attempting to throw the ball in a manner which she knew exposed those in front of her to an unreasonable risk of harm; and that the appellant was justified in expecting that a warning would be given before the ball was thrown. It is argued that a distinction is to be made between the intent and the result; that in any game a certain margin of error is expected; that it is expected that the intent of the player will be to attempt to perform his feat without creating an unreasonable risk to others; that if the intent is proper the error will not be one of negligence, but if the intent is one which may be considered an improper exercise of care and reckless disregard of the safety of others, the error amounts to negligence; that the testimony justifies the inference that Miss Baker intended to throw just over the heads of the girls to a spot in front of the batter, which she had been trained to do; that this constituted negligence; that knowing the likelihood of inaccuracy a reasonable method of returning the ball would have been to intend to throw it in a high arc well over the heads of those in between the thrower and the batter; and that the evidence was sufficient to require the submission of the issues of negligence and assumption of the risk to the jury. With respect to the liability of Nutrilite Products, Inc. and Nutrilite Foundation, it is argued that the evidence shows that these corporations had the right to control the activities of B. P. Kids, Inc., whether or not they exercised that right; that one of the owners of Nutrilite Products, Inc. had taken a large part in securing for Mr. Thomas his job as director of recreation for B. P. Kids, Inc.; that certain officers of Nutrilite, Inc. attended meetings of the board of directors of B. P. Kids, Inc. during 1952; that having the word ''Nutrilite'' on the uniforms used by ''The Pirates'' team was of great benefit to Nutrilite Products, Inc. by way of advertising; and that the appellant's grandmother testified that Mr. Thomas had told her that one of the officers of Nutrilite Products, Inc. had agreed to furnish the uniforms on the condition the word ''Nutrilite'' would be put on them. It is argued that this case is similar in principle to the case of *Bonetti* v. *Double Play Tavern,* 126 Cal.App.2d Supp. 848 [274 P.2d 751].

The general rule is well established that the risk of being struck by batted or thrown balls is one of the natural risks assumed by spectators attending a ball game, in the absence of a sufficient showing that ordinary care was not exercised by the management. The rules established in that connection should be much more applicable where the injured person goes on the field of play and is, in effect, in the position of a participant. The appellant here assumed such a position with full knowledge of the natural and inherent risks involved. The situation here differs materially from that in *Bonetti* v. *Double Play Tavern*, 126 Cal.App.2d Supp. 848 [274 P.2d 751], where the victim was an outsider, there was a strong showing of negligence, and adequate proof of agency.

Conceding the usual rule that one does not assume the risk of another's negligent conduct, substantial evidence of such negligence is required in such a case as this. We find no substantial evidence of negligence on the part of Miss Baker which would be sufficient to exempt the appellant from the effect of the assumption of risk rule. There is no evidence that she attempted to throw this ball in a manner which she knew exposed those in front of her to an unreasonable risk of harm, and all of the evidence is to the contrary. We see no material difference because this accident occurred during a warm-up period rather than an actual game. It is well known that in such a period balls are batted and thrown about, several balls may be in use at the same time, and there is usually a large amount of general activity. In a warm-up, as in a game, balls are thrown quickly and with speed and, inevitably, they do not always follow the path the thrower intended. All of these facts were well known to the appellant, who concedes that in such a case the intent of the player is of the greatest importance, that a certain margin of error is to be expected, and that if the intent is proper the error will not be one of negligence. There is no evidence that the intent of Miss Baker on this occasion included any reckless disregard for the safety of others. There is a conflict as to whether she caught the ball or chased it on the ground, and as to how far behind the appellant she was when the ball was thrown, and the only inference justified by the evidence is that she acted in good faith and honestly attempted to return the ball toward the batter in the usual manner. This is the normal and usual conduct to be expected in such a case and, as usual in a ball game and more frequently in a warm-up, such balls have to be thrown over the

heads of other participants. While there is evidence that a warning was sometimes called out before returning such a ball this was not always done, and there is no evidence that Miss Baker should have known that it was necessary in this instance. A warning would have been unnecessary if the ball had gone as she intended it to do. The appellant testified that she saw Miss Baker catch the ball and, knowing that it would be thrown back, turned her head in another direction. Miss Baker returned the ball, as the appellant knew she was expected to do, and the evidence indicates merely that an unintentional error occurred, the sort of mistake which naturally and frequently occurs in any ball game or warm-up.

In view of all the circumstances it cannot be held that negligence appears on the part of Thomas, as an agent of B. P. Kids, Inc. in failing, if he did, to instruct the members of the team to shout a warning when anyone was in the way. He had instructed them to throw the ball about 10 feet high in such a case, which would be sufficient in the ordinary case, and this is in accord with the usual and well-known practice. Quick play is expected, if not essential, in a warm-up period, a warning would not be necessary except in unusual cases and, viewed as a whole, we cannot regard the evidence as sufficiently substantial to have supported a finding of negligence. It may be observed, however, that in any event any possible finding of negligence would have applied only to the defendant B. P. Kids, Inc. as the employer of Thomas. It rather conclusively appears from the record that the appellant is not interested in obtaining any judgment against B. P. Kids, Inc., and that there is no evidence which would support a judgment against the Boys' Club of Buena Park. In view of the only evidence in the record with respect to negligence, the court was justified in finding that the appellant assumed the risk naturally involved in taking her position on this field of play.

With respect to Nutrilite Products, Inc. and Nutrilite Foundation, we find no evidence in the record which would have supported a finding that Miss Baker was an agent or employee of these corporations, or that either of these corporations had the right to control the activities of B. P. Kids, Inc. or, in turn, of Mr. Thomas or of Miss Baker. Aside from one piece of hearsay there is no evidence that either of these corporations had anything to do with the placing of the name ''Nutrilite'' on these uniforms, and

there is no evidence that the presence of that name gave them any right of control. If, as argued, the evidence justifies the inference that they must have known that this had been done and that they derived some advertising value therefrom, this was not sufficient to show that a right of control existed. The evidence conclusively shows that neither of these corporations furnished or paid for these uniforms. While there was evidence that Nutrilite Foundation was a substantial contributor to the civic program carried on by the B. P. Kids, Inc. it was only one of such contributors, and the fact that certain persons connected with these corporations at times took an interest in the civic activities being conducted by B. P. Kids, Inc. shows no more than a commendable interest on the part of those individuals in the youth activities of the community. All of these factors taken together fall far short of showing such a right of control over the activities of B. P. Kids, Inc., or of Miss Baker, as would be necessary in order to impose liability upon these corporations for anything that here occurred, under the doctrine of *respondeat superior*. If the contrary were to be held, under such facts as here appear, it would be unsafe for any individual or corporation to make contributions to any such charitable work or to permit any expression of appreciation coming from the recipients of the favor thus conferred. The evidence received was not sufficiently substantial to require the court to submit these various issues to the jury.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied November 30, 1955, and appellant's petition for a hearing by the Supreme Court was denied December 28, 1955. Carter, J., was of the opinion that the petition should be granted.