[Civ. No. 11533.   Third Dist.   Feb. 28, 1968.]

ORVAL CHASE, Plaintiff and Appellant, v. SHASTA LAKE UNION SCHOOL DISTRICT, Defendant and Respondent.

Carlton & Asbill and Richard J. Asbill for Plaintiff and Appellant.

William W. Coshow for Defendant and Respondent.

FRIEDMAN, J.—With the consent of the school authorities an adult, evening softball league used the ball field of an elementary school. Plaintiff, playing the left field position, was pursuing a fly ball when he ran into a nearby concrete incinerator, suffering severe skull injuries. His damage action against the school district went to trial before the court sitting without a jury. The court found the school district negligent in knowingly maintaining a dangerous condition; absolved plaintiff of contributory negligence; concluded that he had assumed the risk and rendered a defense judgment, from which plaintiff appeals.

The softball field was small, the bases being 45 feet apart as compared to 60 feet on a standard softball diamond. The boundaries of the outfield were not marked. The incinerator, a tower-like structure about 10 feet tall and 3 feet square, stood in a grassy area in the outer reaches of center field, beyond the range of most hit balls but within range of an occasional hard hit ball. It was built of concrete, its vertical edges bound by angle irons, and stood on a concrete base about 6 inches high and 5 feet square. The edge of the base protruded 2 feet beyond the incinerator on each side. Although a nearby septic tank was protected by a fence, the incinerator was unfenced. Photographs demonstrate that the incinerator and its concrete base were visible from all parts of the playing area. The structure was so located that persons approaching the field would pass nearby.

The softball league had been organized by the school principal. It used the elementary school field with the consent of the district superintendent. The superintendent, the principal, teachers and fathers of students participated in the ball games. Plaintiff had played in four games at that field before the day of his injury. His usual position was shortstop, but he had moved out to the left field position shortly before the accident. Running to his left to catch a fly ball hit over center field, he collided with the incinerator. Retrograde amnesia occurred, depriving him of memory of the accident and of his participation in the ball games preceding the accident.

■ Since the school district is a public entity, its liability for dangerous conditions on its property does not vary with the victim's status as an invitee or licensee. (Gov. Code, § 835.) Contributory negligence and assumption of the risk are available defenses in suits involving dangerous conditions on public property. (Gov. Code, § 815, subd. (b).) ■ There is no inconsistency between the finding absolving plaintiff of contributory negligence and the conclusion that he had assumed the risk of injury. Assumption of the risk rests upon the victim's consent, requiring actual knowledge of danger; but contributory negligence may rest upon constructive knowledge, that is, that a reasonable man should or could have discovered the danger by the exercise of ordinary care. (*Grey* v. *Fibreboard Paper Products Co.*, 65 Cal.2d 240, 244 [53 Cal.Rptr. 545, 418 P.2d 153]; *Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266, 270-271 [32 Cal.Rptr. 193, 383 P.2d 777]; *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904]; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375, 385 [240 P.2d 580].) ■ Where the victim momentarily forgot a known danger, the trier of fact may find that he acted reasonably and was not contributorily negligent. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 237 [282 P.2d 69]; see Rest.2d Torts, § 343 A, comment f.) In a memorandum opinion the trial judge explained the finding against contributory negligence by declaring application of the "momentary inattention" rule.

■ On appeal plaintiff assails the finding of the trial court which forms the basis for the conclusion that he had assumed the risk. The finding recites: "That the plaintiff did in fact see the hazard and appreciate the risk, even though he has no present recollection of doing so, or he reasonably should have seen the hazard and reasonably should have appreciated the risk."

The finding is defective. It declares two alternative propositions: first, that plaintiff was aware of the danger, second, that he reasonably should have been aware of the danger. The first proposition, a declaration of actual knowledge, adequately supports the defense of assumption of the risk; the second, a declaration of constructive knowledge, does not. (*Hayes* v. *Richfield Oil Corp.*, *supra*.) The first rejects the possibility of actual unawareness; the second accepts that possibility. To that extent the two propositions are contradictory. The first cannot be regarded as an unqualified assertion of fact, because it is followed by the second, with no preference being given to

one over the other. As a matter of law the second proposition fails to support the defense judgment.

Appellate courts have power to construe findings liberally in support of the judgment, may strike unnecessary findings and enter their own findings. Where, as here, a judgment rests entirely upon a particular finding, the presence of a contradictory finding impels reversal; it is not appropriate to strike one determination or the other in order to uphold the judgment. (*Brewer* v. *Simpson,* 53 Cal.2d 567, 583-584 [2 Cal. Rptr. 609, 349 P.2d 289].) Appellate modification of pivotal findings is particularly inappropriate when the evidence is close or in conflict. (*Spaulding* v. *Cameron,* 38 Cal.2d 265, 270 [239 P.2d 625]; *Tupman* v. *Haberkern,* 208 Cal. 256, 268-270 [280 P. 970].)

The evidence here is close. The risks assumed by a participant in a game are usually limited to its natural and ordinary risks; if a danger, such as a defect in the premises, occurs outside the range of those inherent in the game, he assumes that danger only if he knows of it.[1] In part, but only in part, the player's assumption of the risk depends upon the obtrusiveness of the defect; in part, upon his personal recognition of the danger it poses.[2] To warrant the assumption defense, the evidence must show not only that the victim had general knowledge of a danger, but that he appreciated the specific risk confronting him. (*Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d at p. 271.)

In this case the incinerator was not an intrinsically dangerous defect. The specific risk was that a fast-running outfielder, intent on the ball, might blindly collide with it. Ascertainment of plaintiff's awareness of that specific risk

---

[1] See *Tavernier* v. *Maes,* 242 Cal.App.2d 532, 550-551 [51 Cal.Rptr. 575]; *Mann* v. *Nutrilite, Inc.,* 136 Cal.App.2d 729, 734 [289 P.2d 282]; *Brown* v. *San Francisco Ball Club,* 99 Cal.App.2d 484, 487 [222 P.2d 19]; *Cole* v. *New York Racing Assn.,* 24 App.Div.2d 993 [266 N.Y.S. 2d 267], affirmed 270 N.Y.S.2d 421 [17 N.Y.2d 761, 217 N.E.2d 144]; Note: 7 A.L.R.2d 704, 707-709. A cross-country jockey, for example, assumed the natural hazards of the course, but not the hazard of an artificially created, partially hidden hole. (*Hotels El Rancho* v. *Pray,* 64 Nev. 591 [187 P.2d 568]; see also *Cole* v. *New York Racing Assn., supra.*) A basketball player, however, was held to have assumed the risk of bleachers placed just outside the court limits, where he saw the bleachers before the game and knew that players might collide with them, but fastened his attention on the basketball during the game. (*Paine* v. *Young Men's Christian Assn.,* 91 N.H. 78 [13 A.2d 820].)

[2] "A defect and the danger from it are not necessarily to be identified, and a person may know of the one without appreciating the other." (*Errico* v. *Washburn Williams Co.,* 170 F. 852, 853, quoted in Prosser on Torts (3d ed.) p. 462.)

was complicated by his retrograde amnesia. Proof of his awareness did not demand direct evidence, but could be inferred from circumstantial evidence, such as his experience and opportunity to observe. (*Grey* v. *Fibreboard Paper Products Co., supra,* 65 Cal.2d at p. 244; *Gilbert* v. *City of Los Angeles,* 249 Cal.App.2d 1006, 1010 [58 Cal.Rptr. 56]; *Tavernier* v. *Maes, supra,* 242 Cal.App.2d at p. 540.) At bat, running the bases or playing infield, an experienced ball player might be fastened with knowledge of the normal risks of the sport; might be held to anticipate spurts of intense physical striving, temporarily obliterating consciousness of all concerns except the game itself; might be familiar with the particular field and aware of the obtrusive concrete incinerator in the outer reaches of center field; yet, having no occasion to play in the incinerator's vicinity, he might form no specific awareness of the risk posed to a player who did. Plaintiff's usual position was shortstop and he had moved to the left field position at some unspecified time preceding the accident.[3] Although both the district superintendent and the school principal had been participants in the softball game, no one had warned the players of the specific hazard the incinerator posed to the outfielders. Indeed, the district superintendent, playing center field, testified that prior to the accident he himself was aware of the incinerator but had not considered it a hazard. In short, the inference that plaintiff did not recognize and did not voluntarily assume the specific risk of colliding with the incinerator might be as appealing to a fact finder as the opposite inference.

█ The defense relies upon the trial judge's memorandum opinion, pointing to passages which seemingly fasten upon plaintiff actual awareness of the very risk which culminated in injury. The clerk's transcript reveals that after the opinion was filed, counsel debated the findings; that the finding now attacked on appeal was prepared at the court's specific direction. That finding, with its alternative declaration of constructive (not actual) knowledge, represents the actual decision. Quite aside from its status as the fact finder's

---

[3] The evidence on this point is quite nebulous. Although two participants other than plaintiff testified, they did not describe the accident in direct terms, did not state at what point of the game it occurred and did not describe plaintiff's preceding activities. Plaintiff himself had no memory of the game, but testified without objection that he had been informed by others that he had been playing shortstop in the preceding games. His statement was accepted by the trial court (in the latter's memorandum opinion) and is restated without challenge in his brief on appeal.

later declaration in time, it may not be negated or modified by the opinion. (*Strudthoff* v. *Yates,* 28 Cal.2d 602, 615-616 [170 P.2d 873].)

█ Finally, plaintiff urges that assumption of the risk is inapplicable as a matter of law, this being an action involving violation of a safety regulation or order. A doctrine of public policy excludes assumption of the risk in certain actions based on violations of safety statutes or orders. Whether the doctrine is broad enough to benefit plaintiff, who was free to abstain from the ball game, is arguable. (See *Finnegan* v. *Royal Realty Co.*, 35 Cal.2d 409, 430-431 [218 P.2d 17] ; cf. *Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846, 847-849 [313 P.2d 854].) In any event, plaintiff points to nothing resembling a safety regulation or order. His source is a manual entitled "Physical Education in the Elementary School," published by the State Department of Education in 1951. The manual is just that, nothing more, a general description of methods and suggested procedures.[4] Its proposals for playground safety do not rise to the level of binding safety regulations adopted under authority of law. (Cf. *Sullivan* v. *United States,* 348 U.S. 170, 173 [99 L.Ed. 210, 216, 75 S.Ct. 182].)

In view of the closeness of the evidence, appellate interpretation or modification of the defective and essentially contradictory finding on assumption of the risk is inappropriate. Rather, the finding requires reversal of the judgment. It is so ordered.

Pierce, P. J., and Regan, J., concurred.

---

[4]The manual was published under the apparent authority of Education Code, section 8152, which directs the State Department of Education (a) to adopt rules and regulations for the establishment of physical education courses, and (b) to compile and print a manual in physical education for distribution to teachers. In its foreword (pp. v-vi) the manual states: "The California Physical Education Act of 1917 provided for the organization and supervision of courses in physical education in the public schools of the State. The State Board of Education was required to adopt such rules and regulations as it might deem necessary to carry out the provisions of the act, to appoint a state supervisor of physical education, and to compile a manual in physical education for distribution to teachers. . . .

". . . . . . . . . . . .
". . . Schedules and procedures for setting up ideal programs are discussed. Standards for facilities and equipment are *suggested*. . . ." (Italics supplied.)