**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000099**
**28-DEC-2021**
**07:51 AM**
**Dkt. 153 MO**

NO. CAAP-20-0000099
(Consolidated with CAAP-20-0000100)


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


**CAAP-20-0000099**
IN THE MATTER OF ADOPTION OF A
MALE CHILD BORN ON NOVEMBER 5, 2013
(FC-A NO. 18-1-005K)


AND


**CAAP-20-0000100**
IN THE MATTER OF ADOPTION OF A
MALE CHILD BORN ON NOVEMBER 5, 2013
(FC-A NO. 18-1-019K)


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

This case involves competing petitions for the adoption
of a child filed by the child's grandmother and by the child's
foster parents. In this consolidated appeal,[1] Petitioner-

---

[1] The first appeal, CAAP-20-0000099, arises from the December 30, 2019 denial of Grandmother's Petition for Adoption, In the Matter of Adoption of a Male Child Born on November 5, 2013, filed in FC-A No. 18-1-005K

(continued...)

Appellant DG (**Grandmother**) appeals from the December 30, 2019 Findings of Fact, Conclusions of Law, Decision and Order (**Decision and Order**), and February 27, 2020 Adoption Decree (**Adoption Decree**), in favor of Appellees-Resource Caregivers (**Caregivers**) KM and JW, filed in the Family Court of the Third Circuit (**Family Court**).[2] Appellee-State of Hawai'i Department of Human Services (**DHS**) recommended adoption of the minor male child (**Child**) by Caregivers, and withheld its consent to Grandmother's petition.

On appeal, Grandmother contends the Family Court erred: (1) by exceeding its subject matter jurisdiction in finding that the DHS acted reasonably in failing to place Child with Grandmother in 2016 (Findings of Fact (**FOF**) 163 and Conclusions of Law (**COL**) 15, 17, 31);[3] (2) by allowing improper ex parte communications in the separate FC-S child welfare case (**FC-S case**)[4] without notice to Grandmother; (3) by applying judicial estoppel to Grandmother's objections to the testimony and recommendations of the Family Court's custody evaluator, Dr. Robert Simon (**Dr. Simon**) (COLs 3, 4, 5); (4) by accepting Dr.

---

[1](...continued)
(**Grandmother's petition**). The second appeal, CAAP-20-0000100, arises from the December 30, 2019 granting of the DHS's "Petition for Adoption Pursuant to Chapter 587A, Hawaii Revised Statutes [(**HRS**)]of a Male Child Born on November 5, 2013 by [Caregivers]" filed in FC-A No. 18-1-019K (**DHS petition**). Both petitions were consolidated for trial although no formal order was entered. This court granted consolidation by order filed March 11, 2020, and the appeals were consolidated under CAAP-20-0000099.

[2]     The Honorable Mahilani E.K. Hiatt presided.

[3]     While FOF 163 deals with the DHS's 2016 placement decision, COLs 15, 17, and 31 deal with the DHS's 2018 consent decisions in these competing adoption petitions filed in 2018. Grandmother provides argument as to FOF 163, but none as to COLs 15, 17, and 31 on subject matter jurisdiction grounds. We do not address Grandmother's challenge to COLs 15, 17, and 31 on this ground. See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived."). COL 15, however, is separately raised and argued in Grandmother's sixth point of error, and we address it infra.

[4]     The FC-S case is described infra.

2

Simon's findings while rejecting the findings of Grandmother's experts -- Drs. Jonathan Gould (**Dr. Gould**), Kim Norman (**Dr. Norman**), and Mark Burdick (**Dr. Burdick**) (FOF 256, COL 7); (5) by denying Grandmother's petition despite its findings and conclusions that Grandmother satisfied the HRS § 578-8 adoption requirements (COLs 13, 14, 15, 24, and 25); (6) by concluding that the DHS reasonably withheld consent to Grandmother's petition despite evidence that HRS § 578-8 (2018) was satisfied (COL 15); (7) in its analysis of the mandatory HRS § 578-8 factors and the "discretionary" HRS § 571-46 (2018) best interest factors and challenging "contradict[ory]" FOFs and COLs (COLs 3, 4, 10, 19, 26(b)(9), 27, 28, and 33); and (8) by entering erroneous, inconsistent, and unsupported findings and conclusions (FOFs 33, 256, COLs 10 and 26(b)(9)), and by omitting findings and conclusions establishing that Grandmother's adoption of Child would be in Child's best interests.

We hold that the Family Court's ruling, that Grandmother was judicially estopped from challenging Dr. Simon's methodology, was harmless error where it was a ruling in the alternative, and where Grandmother had the opportunity to cross-examine and challenge Dr. Simon at trial. We conclude that the Family Court did not abuse its discretion in granting Caregivers' adoption petition. We strike FOF 163, without prejudice, as an unnecessary and irrelevant finding in these adoption proceedings, and affirm in all other respects.

## I.  BACKGROUND

Child was born November 5, 2013, at Kona Community Hospital to biological mother ST (**Mother**), and biological father LE (**Father**). Mother is the biological daughter of Grandmother and MT (**Grandfather**). Mother had emotional and substance abuse issues with alcoholism, drug addiction and mental health problems plaguing her throughout most of her adult life. On March 23,

2016, Mother was arrested for a felony abuse charge related to Grandmother. Grandmother was contacted by the Kona Police Department to come and pick up Child, who was with Mother at the time of her arrest, and Grandmother did so, bringing Child back to Grandmother's home. The following day, Grandmother reported to the DHS that she had Child. Child was temporarily placed with Grandmother, but she purportedly asked Child Welfare Services (**CWS**) to move him, less than three days after placement, fearing that Mother would make good on threats of violence she had made on Grandmother and Child. While this reason is disputed by the DHS and Caregivers, the parties agreed that Grandmother requested the removal, and that Grandmother did not ask for Child to be returned to her care until sometime around Mother's death. On March 31, 2016, the DHS filed a Petition for Temporary Foster Custody of Child in the Family Court of the Third Circuit, in FC-S No. 16-0013K.

As General Licensed Resource Caregivers, Caregivers agreed to take Child. After a brief reunification with Mother, Child was again placed with Caregivers in August 2016, after Mother abandoned Child at a homeless shelter. Sometime around September 13, 2016, prior to Mother's death, Grandmother contacted a CWS social worker, Kerry Perez (**Social Worker**), about having full custody of Child, but Social Worker told Grandmother that full custody of Child "was not possible at that time because [Mother] still had rights to a possible reunification with [Child] depending on her progress and compliance with the Interim Service Plan." On September 15, 2016, Mother died from injuries she sustained in an automobile collision. In September and October 2016, after Mother's death, Grandmother took necessary steps to be considered for Child's placement with her; Grandmother submitted a Foster Home Application for Child, completed the Relative Response Form, and completed all of the

4

requirements of the H.A.N.A.I. Resource Caregiving Training for Children in the Foster Care System.

On December 6, 2016, Grandmother filed a motion to intervene in the FC-S case,[5] after learning that Caregivers asked the Family Court[6] for permission to take Child on a family vacation to the mainland, which would include a visit with Grandfather, Grandmother's ex-husband.  On December 29, 2016, the Family Court denied Grandmother's motion to intervene, and Child was permitted to join Caregivers' family trip, including the visit with Grandfather and Grandfather's extended family.

On March 2, 2018, the DHS filed its Permanent Plan Report in the FC-S case, which recommended permanent placement of Child with Caregivers upon the termination of parental rights.

On March 29, 2018, Grandmother filed her petition to adopt Child in Grandmother's adoption case FC-A No. 18-1-005K.

On May 11, 2018, the Family Court in the FC-S case terminated the parental rights of Mother and Father, and appointed the DHS permanent custodian of Child.  At that time, Grandmother was still not a party to the FC-S case.

On May 14, 2018, the DHS filed its objections to Grandmother's petition in the adoption case, FC-A No. 18-1-005K.

On August 13, 2018, the DHS filed a petition on behalf of Caregivers, in FC-A No. 18-1-019K, for Caregivers to adopt Child.

The consolidated trial on the competing adoption petitions was held for approximately twelve days from May through October of 2019 on the following dates:  May 3, May 29, May 30, May 31, June 26, June 28, August 9, August 12, August 14, September 25, September 30, and October 7, 2019.  Child was

---

[5]     FC-S No. 16-0013K was a child welfare case involving the DHS's motion for termination of Mother's and Father's parental rights over Child.

[6]     The Honorable M. Kanani Laubach presided over Grandmother's motion to intervene in the FC-S case.

5

nearly six years old at the time of the 2019 trial, and had resided continuously with Caregivers and their children since August 2016.

During the ongoing trial of the contested adoption cases in FC-A No. 18-1-005K and FC-A No. 18-1-019K, on June 12, 2019, the DHS filed an ex parte motion on behalf of Caregivers, to request permission from the Family Court in the FC-S case to travel with Child to the mainland and visit Caregivers' families, Grandfather's family, and Child's biological cousins and maternal aunt who flew in from France for the visit. The Family Court granted the ex parte motion and entered an order approving travel on condition that the DHS notify Grandmother of the travel plans and arrange make-up visitation with her. On June 24, 2019, Grandmother filed an ex parte motion to shorten time on Grandmother's second motion to intervene in the FC-S case, and to vacate the Family Court's order granting the DHS's travel request. Grandmother sought to block Child's travel alleging that it would re-traumatize Child to be away from Grandmother.

The Family Court denied Grandmother's motion to vacate Child's travel, but on August 28, 2019, granted Grandmother's second motion to intervene in the FC-S case.

The Family Court filed its Decision and Order on December 30, 2019, awarding adoption of Child to Caregivers. The Adoption Decree in favor of Caregivers was filed on February 27, 2020. Grandmother timely appealed.[7]

---

[7] Self-represented Caregivers filed an Answering Brief that does not comply with HRAP Rule 28(c). In substance, Caregivers "adopt-in-full" the DHS's Answering Brief, and the remainder reads more like a letter to the court. However, the Hawai'i Supreme Court has stated that, to promote access to justice, pleadings prepared by self-represented litigants should be interpreted liberally; and that self-represented litigants should not be automatically foreclosed from appellate review because they fail to comply with court rules. See Erum v. Llego, 147 Hawai'i 368, 380-81, 465 P.3d 815, 827-28 (2020). Accordingly, we may consider the Caregivers' filing.

## II.   DISCUSSION[8]

### A.   Claim of "ex parte" communication in FC-S case.

Grandmother's contention that the Family Court violated her due process rights by allowing ex parte communication in the FC-S case without notice to Grandmother, is without merit. Grandmother was not allowed to intervene in the FC-S case until 2019.  Grandmother's arguments points to two specific instances of ex parte communication in the FC-S case in 2018, prior to Grandmother's intervention:  (1) a letter from the Caregivers to the Family Court presented at a September 24, 2018 hearing in the FC-S case; and (2) "safety concerns" about Grandmother that the Guardian ad Litem, Madeline Reed (**GAL**), brought up at a October 26, 2018 hearing in the adoption case, that had been raised in the FC-S case.

Grandmother claims the Caregivers' letter contained "negative and substantive ex parte communications" from Social Worker, the GAL, and Caregivers.  However, it appears that the Family Court did not receive the letter into evidence at the hearing, and at a subsequent hearing, clarified that the letter was "not actually provided to the Court," and the Family Court had not considered the letter.[9]  Grandmother does not cite to

---

[8]     We have reordered and consolidated Grandmother's points of error for clarity.

[9]     The transcript of the September 24, 2018 FC-S hearing reflects the Family Court did not receive the letter into evidence:

> [SOCIAL WORKER]:  Um, Your Honor, I just wanted to make sure that you took note of the -- the resource parents provided a letter that is an attachment on that report, um, that they really would like to keep confidential which is why I've submitted it in the FC-S case and not in the adoption case, um.

> THE COURT:  Okay.

> . . . .
> [SOCIAL WORKER]:  I just, um, you know, the -- the resource parents have to continue to, um, work with

(continued...)

where in the record the letter can be found, as required by HRAP Rule 28(b)(3).  See <u>Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc.</u>, 114 Hawaiʻi 37, 53, 155 P.3d 1138, 1154 (2007) (waiving argument not supported by reference to the record)

---

[9](...continued)
> [Grandmother] who has, you know, there's been some, um, <u>negativity</u>, and they wanna be <u>able to share openly with the Court</u> in the best interest of [Child] without creating more animosity, um, you know.
>
> THE COURT:  Sir, I understand.  I understand that, um, that you don't wanna, um, burn bridges when you don't have to.  <u>The Court has not received this into evidence yet</u>.

(Emphases added).  At a subsequent hearing approximately a month later in the adoption case, the Family Court responded to Grandmother's request for document production, and specifically ordered the letter be produced to Grandmother as follows:

> [GRANDMOTHER'S COUNSEL]:  Um, I think -- I think what we would like to do with respect to the FC-S file . . . . there appears to be a letter to the Court from [Caregivers].  Uh, the date of that letter is not identified.  We have not seen that.  We don't know its contents.
>
> It is our view that that letter -- that the other documents the Court's identified as being confidential I think are protected under the court records rules and that's fine.  Um, it's that one letter that is the subject of our limited objections and we cited some authorities on that.
>
> . . . .
>
> THE COURT:  -- but, um, <u>I've already determined that that letter is something that should be produced</u>.
>
> . . . .
>
> THE COURT:  -- <u>the Court did wanna make a note that with respect to that letter it was not actually provided to the Court</u>.  Um, it was, um, <u>I believe it was brought to court, um, but then I said that if it wasn't gonna be given to all of the parties then it wasn't something, um, that the Court could actually review</u>.
>
> So I think it's part of the record because it existed and so it got put in the file, but I wanted to note on the record it's not something -- <u>I mean I saw it because it's -- it's in there now</u>, but <u>it's not something that had previously been considered by the Court</u>.  Um, so I would not agree, um, with the DHS's request that it not be produced 'cause I think it's relevant.

(Emphases added).  The Family Court indicated that it did not consider the letter.

8

(citations omitted). Grandmother's contentions about the letter are insufficient. Nor is there any indication that the Family Court actually considered the letter. Grandmother's contention of error is without merit.

Grandmother's second claim is that the GAL improperly brought up "safety concerns" about Grandmother from the FC-S case, at a October 26, 2018 hearing in this case. Grandmother argues that the Family Court was privy to additional information purportedly presented at the FC-S hearing, and the Family Court improperly considered such information when addressing future off-island travel. Our review of the pertinent transcript reveals that no objection was raised during the hearing,[10] and

---

[10]    The only discernible response we can find as to Grandmother's second claim regarding the GAL's mention of "safety concerns" was made at the October 26, 2018 hearing, as follows:

> THE COURT:  Okay?  Anything else?  Were there other issues between --
>
> [GAL]:  Yeah, just one matter for clarification.
>
> So in the FC-S case, um, I believe there is already an order stating that no one is to remove the child from the Island of Hawaiʻi without court permission.  Um, there has been some concern that even after being instructed otherwise that [Grandmother] had perhaps taken [Child] off island.
>
> . . . .
>
> [GRANDMOTHER'S COUNSEL]:  It's the first I've heard of it.  Uh, I've -- I've heard absolutely no hint or suggestion from any party that [Grandmother] has removed [Child] from the island.  Um, uh, I saw him this morning, uh, so I know that he is on the island today, um, but, uh --
>
> [GAL]:  Yeah.  Today's not the issue.
>
> . . . .
>
> THE COURT:  Not to interrupt you but I don't think it was -- it was, uh, like yesterday or last week that there's been, uh, an issue with, uh, with the child being removed from the Big Island but.
>
> . . . .
>
> THE COURT:  I'm talking about -- I'm talking about the
> (continued...)

9

this issue is waived.  See HRAP Rule 28(b)(3); State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal . . . ."); State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal.").

As to Grandmother's argument that Grandmother's due process rights were violated by the "ex parte" communication, Grandmother has not indicated whether and how her due process challenge was preserved below, and it is waived.  See Moses, 102 Hawai'i at 456, 77 P.3d at 947; Hoglund, 71 Haw. at 150, 785 P.2d at 1313.

**B.   FOF 163 was unnecessary and irrelevant.**

Grandmother contends that the Family Court "exceed[ed] its subject matter jurisdiction by finding that [the] DHS acted reasonably in failing to place" Child with Grandmother in 2016,

---

[10](...continued)
-- off the islands.

[GRANDMOTHER'S COUNSEL]:  Uh, to the -- to my best knowledge that has never happened by [Grandmother].  It -- it has happened that he's been taken to the mainland, um, with the --

THE COURT:  With permission --

[GRANDMOTHER'S COUNSEL]:  -- State's approval.

THE COURT:  -- of the Court.  Right.

[GAL]:  Yeah.

THE COURT:  But I mean before you make any more representations on the record you might wanna review the documents just to see, uh, what the surrounding, uh, understanding or what it was.

But I -- I'm not saying that it happened.  I'm just saying, uh, that the Court will go ahead and order that no one shall take the minor off the Island of Hawai'i without permission of the Court. . . .

(Emphasis added).

and argues the Family Court "overreached" its jurisdiction in FOF 163.[11]  Grandmother argues that the Family Court did not have subject matter jurisdiction to conclude that the DHS's 2016 placement decisions were reasonable, "essentially deciding the main issue raised by [Grandmother] in a separate lawsuit filed against [the DHS]."[12]  Grandmother's challenge to FOF 163 has merit but on grounds different from what Grandmother argues.

"Subject matter jurisdiction is concerned with whether the court has the power to hear a case."  Int'l Bhd. of Painters & Allied Trades, Local Union 1944 v. Befitel, 104 Hawaiʻi 275, 281, 88 P.3d 647, 653 (2004) (citation omitted).  Grandmother claims that FOF 163 was erroneous because it was "beyond the court's reach" and jurisdiction and was an "attempt to hamstring [Grandmother's] separate lawsuit against DHS."  The Family Court had subject matter jurisdiction to hear and decide the competing adoption petitions in this case.  While we reject Grandmother's jurisdictional argument as without merit, we nevertheless agree that FOF 163 was irrelevant to the issues in these adoption proceedings.

_____

[11]     FOF 163 provides:  "For these and all other reasons supported by the record herein the court finds that [the] DHS did not act unreasonably in failing to place [Child] with [Grandmother] after the initial placement of [Child] with [Grandmother] in March of 2016."

[12]     We take judicial notice of the records and files in Grandmother's separate lawsuit filed on March 15, 2019, in the Circuit Court of the Third Circuit (**Circuit Court**), Civil No. 3CC19100072K.  See Hawaiʻi Rules of Evidence Rule 201; see also State v. Kwong, 149 Hawaiʻi 106, 116-17, 482 P.3d 1067, 1077-78 (citing Eli v. State, 63 Haw. 474, 478, 630 P.2d 113, 116 (1981) (where the equity of a situation dictates, an appellate court may use its discretion to take judicial notice of court files that are not part of the record of appeal)).  Grandmother's Circuit Court complaint alleges, inter alia, negligence against the State, negligent infliction of emotional distress, and multiple violations of the Hawaiʻi State Constitution, against defendants State of Hawaiʻi, the DHS Social Worker, the DHS Supervisor, the DHS Unit Supervisor, the Caregivers, and "Doe Defendants."  The Caregivers were subsequently dismissed from the lawsuit on September 24, 2019 by stipulation.  The DHS Social Worker, DHS Supervisor, and DHS Unit Supervisor were also dismissed from the lawsuit on January 3, 2020 after the Circuit Court granted their motion to dismiss.  On January 13, 2020, the State filed a Motion for Summary Judgment as to the Third Circuit Court's lack of subject matter jurisdiction based on judicial findings and rulings from the Family Court; this motion was stayed as of April 21, 2020, pending the outcome of this appeal.

FOF 163's finding that the "DHS did not act unreasonably" in its 2016 placement decision (to place Child with Caregivers) was unnecessary and irrelevant to decide the competing adoptions filed in 2018. The application of the HRS § 578-8 adoption criteria and the best interests factors in HRS § 571-46 to these competing adoption petitions does not require or entail a judicial finding or determination of the reasonableness of the DHS's placement decisions two years earlier. Because FOF 163 was unnecessarily included and outside the scope of the current dispute in the adoption case, and given pending litigation between the parties, we conclude it is appropriate to strike FOF 163. See Chase v. Shasta Lake Union School Dist., 259 Cal. App. 2d 612, 616 (1968) ("Appellate courts . . . may strike unnecessary findings[.]") (citation omitted). Accordingly, we strike FOF 163. See id.

### C. No separate and immediate hearing required for consent to adoption under HRS § 578-2(c)(1)(H).

Grandmother challenges COL 15[13] and contends that the

---

[13] COL 15 states:

15. DHS, the agency having legal custody of [Child], reasonably withheld its consent to [Grandmother's] adoption of [Child] for the following reasons:

    a. [Grandmother] had custody of [Child] in March, 2016 as a foster parent and it was [Grandmother] who contacted DHS and asked them to remove [Child] because she could not find the appropriate child care. It was not until after [Mother] passed away that [Grandmother] sought to regain custody of [Child] and filed a second application for foster custody of [Child];

    b. [Grandmother] was not credible in asserting that she will maintain connections between [Child] and his other relatives;

    c. [Grandfather] supported the adoption of [Child] by the [Caregivers] and expressed reasonable fears that [Grandmother] will cut-off contact between [Child] and his family if [Grandmother]
    (continued...)

12

Family Court erred by concluding that the DHS reasonably withheld consent to Grandmother's petition "despite evidence that HRS § 578-8 was satisfied" and without a "separate inquiry" into the withholding of consent as required by Matter of Adoption of H.A., 143 Hawai'i 64, 422 P.3d 642 (App. 2017). Grandmother claims that after the DHS filed its May 14, 2018 written objections to Grandmother's March 29, 2018 petition, the Family Court should have held a "hearing immediately" on this issue, rather than conducting the inquiry at trial one year later. Grandmother argues that "[h]ad actual and timely inquiry been made into [the DHS's] objections as required per 578-2(c)(1)(H)," the Family Court would have "found unreasonable withholding of consent."

However, Grandmother does not point to, and the record does not reflect, that Grandmother raised these challenges below, i.e., that a separate hearing on the withholding of consent was immediately required. This argument is waived. See Moses, 102

---

¹³(...continued)

        is allowed to adopt [Child], with which this court concurs;

  d.    DHS believes it is in [Child's] best interest to be adopted by the [Caregivers] and not [Grandmother], with which this court concurs;

  e.    The [Caregivers] have carried [sic] for [Child] since August 2016 and the [Caregivers] have done an excellent job in meeting [Child's] needs;

  f.    [Child] is bonded to the [Caregivers], [and Caregivers' three other children];

  g.    The [Caregivers] are committed to allowing [Child] to have contact with all of his relatives, including [Grandmother], [Sister], and [Grandfather];

  h.    The [Caregivers] have consistently and regularly facilitated contact and visitation with [Child] by his relatives;

  i.    DHS was reasonably concerned that [Child] was returning from visits with [Grandmother] in a dysregulated condition, with which this court concurs.

Hawai'i at 456, 77 P.3d at 947; Hoglund, 71 Haw. at 150, 785 P.2d at 1313.

> **D.** **Application of judicial estoppel was harmless error.**

Grandmother contends that the Family Court erred by applying judicial estoppel, in COLs 3, 4, and 5, to Grandmother's objections to the findings and recommendations of the custody evaluator, Dr. Simon. Grandmother argues that the Family Court misconstrued the parties' stipulation, drafted by Grandmother's counsel, from an agreement for Dr. Simon to do an evaluation, to a "non-existing agreement not to challenge whatever methodology Dr. Simon chose to undertake." Grandmother also claims that the Family Court "unfairly denied" Grandmother's discovery motions for Hawai'i Family Court Rules (**HFCR**) Rule 35[14] examinations by the expert witnesses because "[u]nder HFCR 26(b), broad discovery, including Rule 35 examinations, is generally allowed."[15] While the application of judicial estoppel was

---

[14]    HFCR Rule 35(a) pertinently provides for court orders to parties to submit to physical or mental examinations, as follows:

> **PHYSICAL AND MENTAL EXAMINATION OF PERSONS.**
>
> **(a)  Order for examination.** When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made upon the agreement of the parties or on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the scope of the examination and the person or persons by whom it is to be made.
>
> . . . .

(Bolding in original).

[15]    HFCR Rule 26(b)(1) provides generally that:

> Parties may obtain discovery regarding any matter, not privileged, or otherwise protected by law, which is relevant
>                                                             (continued...)

14

erroneous, we nevertheless conclude such error was harmless.

"[T]he family court's COLs are reviewed on appeal *de novo*, under the right/wrong standard[,]" and consequently, COLs are "not binding upon an appellate court and are freely reviewable for their correctness." In re Doe, 95 Hawai'i 183, 190, 20 P.3d 619, 623 (2001) (italics in original) (internal quotation marks omitted). COLs 3, 4, and 5 state:

> 3. Pursuant to the doctrine of judicial estoppel, a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he has, or is chargeable with, full knowledge of the facts, and another will be prejudiced by his action. Judicial estoppel partakes of positive rules of procedure based on manifest justice and, to a greater or lesser degree, on considerations of the orderliness, regularity, and expedition of litigation. This doctrine prevents parties from playing fast and loose with the court or blowing hot and cold during the course of litigation. *Roxas v. Marcos*, 89 Haw. 91, 99, 969 P.2d 1209, 1217 (Haw. 1998).
>
> 4. Upon the failure of [Grandmother] to have Dr. Norman appointed as the custody evaluator, the parties discussed alternative custody evaluators and agreed upon Dr. Simon. [Grandmother] drafted, agreed to and accepted the CE Stipulation and Order which expressly sets forth that Dr. Simon would conduct a thorough and comprehensive custody and visitation evaluation, as he sees fit at his sole discretion - including determining which collaterals to contact. In reliance upon the CE Stipulation and Order, the court then proceeded to move forward with the litigation with the understanding that Dr. Simon, as a neutral, would be assisting the court and the parties in reaching a fair resolution of their competing petitions. Prior to the commencement of trial, Dr. Simon concluded in favor of the [Caregivers] adopting [Child] over [Grandmother]. [Grandmother] immediately rejected Dr. Simon's report and conclusions and sought, through her own testimony and that of

---

[15](...continued)
> to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

her experts, to discount every aspect of Dr. Simon's Report, opinions and methodology.

5. <u>As an alternative and independent basis for its rulings</u> herein the court finds that [Grandmother] is judicially estopped from contesting Dr. Simon's methodology, having previously solicited and obtained the opposing parties and the court's agreements to allow Dr. Simon to conduct his evaluation at his sole discretion.

(Emphasis added) (italics in original). COL 3 states the law of judicial estoppel. COL 4 sets forth pertinent procedural history and contains findings of fact, rather than conclusions of law, which have not been shown to be clearly erroneous. See <u>Kilauea Neighborhood Ass'n v. Land Use Comm'n of the State of Hawaii</u>, 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988) (accuracy of label affixed by agency, as a finding of fact or conclusion of law, is freely reviewable by the appellate courts). As to COL 5, however, where the Family Court applied judicial estoppel against Grandmother's challenge to Dr. Simon's methodology because of the parties' prior agreement, we conclude the Family Court erred.

Grandmother asserts that "[u]nder the Stipulation, made pursuant to HRS § 571-45 and § 571-46(4), [Grandmother] was free to cross-examine Dr. Simon in all respects as HRS § 571-46(a) expressly provides." In the November 21, 2019 Stipulation and Order for Appointment of Custody/Visitation Evaluator (**Stipulation**), entered into pursuant to HRS §§ 571-45 (2018) and 571-46(a)(4) (2018),[16] the parties agreed to the appointment of Dr. Simon as the neutral custody evaluator who would prepare a report for the Family Court. HRS § 571-46(a)(4) provides the parties with the right to object to the custody evaluator's

---

[16] HRS § 571-45 provides for, *inter alia*, social studies, assessments and investigation reports to be completed for the courts prior to dispositions and decisions regarding disputed custody or support issues.

The Stipulation incorrectly cited HRS § 571-46(4); the correct statute is HRS § 571-46(a)(4).

16

report and a right to cross-examine the author of the report.[17]
Consistent with HRS § 571-46(a)(4), there was no language in the
Stipulation that prohibited any party from challenging Dr.
Simon's report.  Thus, this portion of COL 5, where the Family
Court applied judicial estoppel to Grandmother's challenge to Dr.
Simon's methodology, was wrong.

We nevertheless conclude that the Family Court's
erroneous application of judicial estoppel was harmless because
the Family Court stated that estoppel was applied as "<u>an
alternative and independent basis</u> for its rulings herein . . . ."
COL 5 (emphasis added); <u>see</u> HFCR Rule 61.[18]  This error did not
affect Grandmother's substantial statutory right to challenge Dr.
Simon at trial, where the record reflects that Grandmother was
afforded the opportunity to question and examine Dr. Simon at
trial, via depositions, which were made a part of the trial

---

[17]     HRS § 571-46(a)(4) provides:

> Whenever good cause appears therefor, the court may require
> an investigation and report concerning the care, welfare,
> and custody of any minor child of the parties.  When so
> directed by the court, investigators or professional
> personnel attached to or assisting the court, hereinafter
> referred to as child custody evaluators, shall make
> investigations and reports that shall be made available to
> all interested parties and counsel before hearing, and the
> reports may be received in evidence if no objection is made
> and, if objection is made, may be received in evidence;
> <u>provided the person or persons responsible for the report
> are available for cross-examination as to any matter that
> has been investigated</u>. . . .

(Emphasis added).

[18]     HFCR Rule 61, Harmless Error, provides:

> No error . . . or defect in any ruling or order . . .
> is ground for granting a new trial or for setting aside a
> verdict or for vacating, modifying, or otherwise disturbing
> a judgment or order, unless refusal to take such action
> appears to the court inconsistent with substantial justice.
> The court at every stage of the proceeding must disregard
> any error or defect in the proceeding that does not affect
> the substantial rights of the parties.

record by agreement, and Dr. Simon's trial testimony by video conference.  See id.

Grandmother also argues that the Family Court "unfairly denied" her HFCR Rule 35 motions for examination, where Dr. Simon's final report was not submitted until April 30, 2019, three days before trial.[19]  See FOF 250.  We conclude that the Family Court did not abuse its discretion in denying these requests.

We review a trial court's rulings on discovery matters for abuse of discretion.  Fisher v. Grove Farm Co., Inc., 123 Hawai'i 82, 94, 230 P.3d 382, 394 (App. 2009) (citation omitted). The Family Court denied Grandmother's first Rule 35 motion for Dr. Norman to conduct an examination of Child without prejudice on October 1, 2018, because the Family Court wanted to wait for the custody evaluator's report.  See FOFs 289, 290.  This was not an abuse of discretion.  On April 9, 2019, Grandmother moved the court for Rule 35 examinations, both for retroactive approval of examinations that Dr. Norman had improperly conducted of Child without court approval, and for prospective approval for future testing of Child by Dr. Burdick and Dr. Norman.  See FOFs 301, 302.  The Family Court denied the motion for retroactive approval, and denied the request for additional testing of Child because the court did not want to delay the commencement of trial.  See FOFs 291, 301, 302.  The Family Court did not abuse its discretion in denying these requests.

Grandmother claims the Family Court "unfairly denied" the Rule 35 motions because at trial, the Family Court "then discounted the testimony of Dr.'s [sic] Norman and Burdick, in part because examinations had not been done," citing FOFs 298-300, 309, and 314-317, 340 and 346.  We have reviewed these

---

[19]  Grandmother did not raise the denial of the Rule 35 discovery motions in her point of error as required under HRAP Rule 28(b)(4).  However, we review her argument in the interest of addressing the merits of appeals where possible.

findings, which have not been challenged by Grandmother, and they do not reflect that the reason why the Family Court rejected the testimony of Dr. Norman and Dr. Burdick was "in part because examinations had not been done[.]" Unchallenged findings are binding on appeal. In re Doe, 99 Hawai'i 522, 538, 57 P.3d 447, 463 (2002) (citation omitted). FOFs 298-300 recount the procedural facts surrounding the requests for examination. FOFs 309 and 314 refer to Dr. Norman's lack of meeting with Caregivers and lack of observation of Child in the Caregivers' home; and concludes that these deficiencies, *inter alia*, render Dr. Norman's opinions "factually flawed." The second motion for Rule 35 examination requested additional testing of Child; not to meet with Caregivers or to observe Child in Caregivers' home. In FOFs 315-317, the Family Court weighed and considered Dr. Norman's testimony, finding him not credible, and the fact that the Rule 35 examination for testing of Child "had not been done" was not a factor in its assessment. In FOF 340, the Family Court discounted Dr. Burdick's testimony because he did not meet with Caregivers, not because the additional testing of Child was not done. In FOF 346, the Family Court rejected Dr. Burdick's report due to its reliance on Dr. Norman's report and opinion. Grandmother's contentions are without merit.

> **E.    The Family Court did not err in accepting Dr. Simon's opinions and rejecting the opinions of Grandmother's experts.**

Grandmother contends that the Family Court erred in accepting Dr. Simon's opinions and rejecting the opinions of Drs. Gould, Norman, and Burdick. Grandmother argues the Family Court should not have discounted: (1) the reliability of Dr. Gould's report; (2) the Bracken Test performed by Dr. Norman; and (3) the reliability of Dr. Burdick's findings. Grandmother challenges, *inter alia*, Dr. Simon's methodology and analysis, as "poor," "patently unreliable," and "conclusory;" the lateness of Dr. Simon's report; and the report's lack of focus on the statutory

19

criteria.  We conclude the Family Court did not err or abuse its discretion.

"The family court is given much leeway in its examination of the reports concerning a child's care, custody and welfare[.]"  Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citing Doe, 95 Hawai'i at 190, 20 P.3d at 623).  Its conclusions, if supported by the record and not clearly erroneous, must stand on appeal.  Id.  "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact."  Id.; see JM v. YM, No. CAAP-14-0001178, 2016 WL 300900, at *3 (Haw. App. Jan. 25, 2016) (mem.) (holding that it was not clearly erroneous for the family court to have given less weight to an expert's testimony than to the testimony of the custody evaluator).

Here, Grandmother's experts testified and presented their reports at trial.  Dr. Simon also testified at trial, via deposition and live trial testimony.  As factfinder, the Family Court heard all of the evidence, specifically evaluated and weighed each expert's testimony, and made credibility determinations which it explained in detailed FOFs/COLs.  The Family Court's determinations of each expert's credibility, and the weight to be given to each expert's testimony, were well within its broad discretion and role as factfinder – and thus, Grandmother's contentions are without merit.  See Fisher, 111 Hawai'i at 46, 137 P.3d at 360.

### F.     The Family Court did not abuse its discretion in denying Grandmother's petition.

Grandmother contends that the Family Court erred in denying her Petition because:  (1) Grandmother satisfied the HRS § 578-8 adoption requirements; (2) the court erroneously analyzed the "mandatory HRS § 578-8 factors and the discretionary HRS § 571-46 best interest factors;" and (3) there were errors and

omissions in the FOFs/COLs and that Child's best interest was adoption by Grandmother. We reject Grandmother's contention that the Family Court erred in denying her Petition.

"[W]hen a conclusion of law presents mixed questions of fact and law, we review it under the 'clearly erroneous' standard because the court's conclusions are dependent on the facts and circumstances of each individual case." JW v. RJ, 146 Hawai'i 581, 585, 463 P.3d 1238, 1242 (App. 2020) (citing Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007)).

Adoption proceedings are governed by HRS Chapter 578. In re H.A., 143 Hawai'i at 75, 422 P.3d at 653. "[N]o decree of adoption may be entered unless all of the HRS § 578-8(a) requirements have been satisfied." Id. at 78-79, 422 P.3d at 656-57. HRS § 578-8(a),[20] sets forth four criteria that must be assessed in order for the Family Court to enter an adoption decree: (1) the child is adoptable; (2) the child is physically, mentally, and otherwise suitable for adoption by the petitioners; (3) the petitioners are fit and proper persons who are

---

[20]     HRS § 578-8(a)(1)-(4) (2018) provides as follows:

(a)     No decree of adoption shall be entered unless a hearing has been held at which the petitioner or petitioners, and any legal parent married to a petitioner, and any subject of the adoption whose consent is required, have personally appeared before the court, unless expressly excused by the court. After considering the petition and any evidence as the petitioners and any other properly interested person may wish to present, the court may enter a decree of adoption if it is satisfied that:

(1)     The individual is adoptable under sections 578-1 and 578-2;

(2)     The individual is physically, mentally, and otherwise suitable for adoption by the petitioners;

(3)     The petitioners are fit and proper persons and financially able to give the individual a proper home and education, if the individual is a child; and

(4)     The adoption will be for the best interests of the individual[.]

financially able to give the child a proper home and education; and (4) the adoption is in the best interests of the child. A family court's "determination of what is or is not in a child's best interests is reviewed on appeal for clear error." Id. at 75, 422 P.3d at 653 (citation omitted).

Here, the Family Court addressed each of the four criteria, and determined it was in Child's best interests for the Caregivers' petition to be granted. Grandmother's arguments focus on Factor 3 (HRS § 578-8(a)(3)), where the Family Court found that the Caregivers are fit and proper adoptive parents and financially able to give Child a proper home and education (see COL 19); and Factor 4 (HRS § 578-8(a)(4)), where the Family Court found it was in Child's best interests to be adopted by the Caregivers. See COLs 20 and 26. It was not erroneous for the Family Court to grant the Caregivers' petition after weighing the evidence and drawing conclusions as to each HRS § 578-8 factor. See id.; JW, 146 Hawai'i at 585, 463 P.3d at 1242.

With regard to Factor 3, Grandmother argues that the Family Court did not adequately address the financial ability of Caregivers pursuant to HRS § 578-8(a)(3), which states: "The petitioners are fit and proper persons and financially able to give [child] a proper home and education. . . ." Grandmother challenges COLs 19 and 33,[21] that determined that Caregivers are "financially able" to give Child a proper home and education. Grandmother argues that no findings were made substantiating Caregivers' financial ability, other than a conclusory statement that the Caregivers are financially able to provide for Child. While there are findings that reference Caregivers' travel to

---

[21] COL 19 states: "The [Caregivers] are fit and proper adoptive parents and financially able to give [Child] a proper home and education, as required by HRS § 578-8(a)(3)."

COL 33 states: "Based on the Court's FOF set forth above, the court concludes that the four factors in HRS § 578-8(a) are satisfied by the adoption of [Child] by the [Caregivers]."

California "at least once a year to visit their family and friends," (FOF 195), and that Caregivers have included Child in their travel plans since he has been placed with them (FOF 196), there appear to be no additional findings that provide specific details as to the Caregivers' financial ability. Here, the Family Court found, based on the record before it, that Caregivers are "financially able" to provide for Child (see FOF 105) and concluded that Caregivers are fit and proper adoptive parents and financially able to give Child a proper home and education under HRS § 578-8(a)(3). See FOF 105,[22] COL 19. The fact that the record showed, and the Family's Court's findings reflected, Grandmother's strong financial ability does not render the Family Court's finding that Caregivers were "financially able" to provide for Child clearly erroneous. Given the broad discretion afforded to family court decisions, we decline to disturb the Family Court's FOFs and COLs containing mixed findings of fact and conclusions of law, as we cannot conclude that they are clearly erroneous. See JW, 146 Hawai'i at 585, 463 P.3d at 1242.

As to Factor 4, Grandmother addresses each of the sixteen "best interest" HRS § 571-46(b) factors,[23] and contends

---

[22] FOF 105 states: "The [Caregivers] are financially able to provide for [Child]."

[23] HRS § 571-46 (2018), Criteria and procedure in awarding custody and visitation; best interest of the child, states:

> (b) In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:
>
> (1) Any history of sexual or physical abuse of a child by a parent;
>
> (2) Any history of neglect or emotional abuse of a child by a parent;
>
> (3) The overall quality of the parent-child relationship;

(continued...)

that her petition should have been granted because the Family Court should not have applied these "discretionary" factors. Grandmother argues that "HRS § 578-8(a)(4) requires the court to fashion its own best interest analysis."

We do not agree that HRS § 578-8(a)(4) requires the

---

[23](...continued)

> (4) The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;
>
> (5) Each parent's cooperation in developing and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;
>
> (6) The physical health needs of the child;
>
> (7) The emotional needs of the child;
>
> (8) The safety needs of the child;
>
> (9) The educational needs of the child;
>
> (10) The child's need for relationships with siblings;
>
> (11) Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;
>
> (12) Each parent's actions demonstrating that they separate the child's needs from the parent's needs;
>
> (13) Any evidence of past or current drug or alcohol abuse by a parent;
>
> (14) The mental health of each parent;
>
> (15) The areas and levels of conflict present within the family; and
>
> (16) A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor[.]

HRS §§ 571-46(b)(1)-(16).

24

Family Court to fashion its "own best interest analysis." In <u>In re H.A.</u>, we noted that while "HRS chapter 578 does not define what constitutes the best interest of the child in the context of adoption proceedings," we observed that "Hawaiʻi courts have often looked to applicable best-interest-of-the-child factors provided in HRS chapter 571 for the purpose of determining custody and visitation in divorce proceedings." 143 Hawaiʻi at 76, 422 P.3d at 654 (citing <u>In the Interest of AS</u>, 130 Hawaiʻi 486, 507, 312 P.3d 1193, 1214 (App. 2013), <u>affirmed and clarified by</u> <u>In re AS</u>, 132 Hawaiʻi 368, 376-77, 322 P.3d 263, 271-72 (2014)). The Family Court's application of the HRS § 571-46(b) best interest factors to these adoption petitions was not wrong. <u>See</u> <u>id.</u> The Family Court is "granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met." <u>Fisher</u>, 111 Hawaiʻi at 50, 137 P.3d at 364. Grandmother's contention is without merit.

Grandmother finally contends that under a best interests analysis under HRS § 578-8(a)(4), kinship should be the "anchor," but the Family Court erroneously treated it as a "non-factor." Grandmother argues that kinship is a "mandatory and substantial factor," and that in <u>In re AS</u>, "the [supreme] court said that . . . kinship is the 'anchoring proposition in the sea of circumstances.'" Opening Brief at 43. Grandmother mischaracterizes this quote as the holding of the Hawaiʻi Supreme Court when it was not; this quote comes from the concurring opinion by Justices Acoba and Pollack. <u>In re AS</u>, 132 Hawaiʻi at 390, 322 P.3d at 285 (Acoba, J. concurring). Here, the Family Court's conclusions regarding kinship in COL 28, correctly acknowledged that "kinship may be considered a substantial factor in placement decisions." <u>See</u> <u>In re AS</u>, 132 Hawaiʻi at 377-78, 322 P.3d at 272-73; <u>In re H.A.</u>, 143 Hawaiʻi at 64, 422 P.3d at 642. The Family Court ultimately concluded that: "Under the

25

circumstances of this case, the court does not find that [Grandmother's] kinship to [Child] is sufficient to overcome the best interest of [Child] being placed with the [Caregivers]. . . . Thus, on the entire record in this case, kinship does not trump all of the other factors set forth in HRS § 571-46(b)." COL 29.

The record reflects that the Family Court carefully considered and weighed each of the best interest factors in HRS § 571-46(b), and made detailed and comprehensive findings to explain its rationale. We conclude that there was no clear error in the Family Court's determination of what is in the best interests of Child. See In re H.A., 143 Hawai'i at 75, 422 P.3d at 653. Accordingly, we do not disturb the Family Court's decision that the adoption of Child by Caregivers was in Child's best interest.

### III. CONCLUSION

Based on the foregoing, we affirm the (1) December 30, 2019 Findings of Fact, Conclusions of Law, Decision and Order, with the exception of Finding of Fact 163 which is stricken without prejudice, and (2) February 27, 2020 Adoption Decree, filed in the Family Court of the Third Circuit.

DATED: Honolulu, Hawai'i, December 28, 2021

On the briefs:

Kai Lawrence
for Petitioner-Appellant

Kathy K. Higham
Deputy Attorney General
for Respondent-Appellee State
of Hawai'i

KM and JW
Respondent-Appellees, self-
represented litigants

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge